UNITED STATES of America, Appellee,

v.

**Herbert R. MONTANYE, a/k/a Muscles, Appellant.**

UNITED STATES of America, Appellee,

v.

**George A. BRUTON, also known as Homer, Appellant.**

UNITED STATES of America, Appellee,

v.

**John J. CALIA, Jr., Appellant.**

UNITED STATES of America, Appellee,

v.

**John S. GLORIOSO, also known as Harry, also known as Harry Johns, Appellant.**

Nos. 91–1703, 91–2028, 91–2238 and 91–2242.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 11, 1991.

Decided May 6, 1992.

Rehearing and Rehearing En Banc Denied in Nos. 91–2028 and 91–2238 June 11, 1992.

Rehearing En Banc Granted, Opinion Vacated in No. 91–1703 July 30, 1992.

Daryl Douglas, Kansas City, Mo., argued for appellant Montanye.

Patrick Reidy, Kansas City, Mo., argued, for appellant Bruton.

F.A. White, Kansas City, Mo., for appellant Calia.

G.H. Terando, Poplar Bluff, Mo., for appellant Glorioso.

Charles E. Ambrose, Asst. U.S. Atty., Kansas City, Mo., for appellee.

Before FAGG, Circuit Judge, BRIGHT, Senior Circuit Judge, and WOODS,* District Judge.

BRIGHT, Senior Circuit Judge.

George Bruton, John Calia, Herbert Montanye and John Glorioso appeal their convictions of conspiracy to distribute methamphetamine, marijuana, cocaine, and related offenses, and the sentences imposed on them. As concerns Bruton's convictions on Counts I and II for conspiracy and continuing criminal enterprise, he alleges that, taken together, these convictions amount to double jeopardy. On review, we remand Bruton's case, No. 91-2028, for the district court to vacate one of those two convictions. We also reverse Montanye's (No. 91-1703) conviction for attempted manufacturing of methamphetamine. Finally, we vacate Montanye's sentence and remand his case for resentencing.

Appellants make numerous arguments, many of which we reject without discussion as meritless. We have chosen to address the following arguments. Collectively, appellants argue: (1) the district court erroneously admitted some hearsay statements made by a co-conspirator; (2) the district court erred in entering judgment against appellants for conspiracy because a fatal variance existed between the indictment and the facts that the Government alleged at trial; (3) the district court erred in entering judgment against them on their convictions because the Government presented insufficient evidence.

Bruton argues the district court: (1) violated his rights under the Double Jeopardy clause by convicting him of both conspiracy and conducting a continuing criminal enterprise (CCE) for engaging in the same con-

* The HONORABLE HENRY WOODS, United States District Judge for the Eastern District of Arkansas, sitting by designation.

duct; (2) erred in instructing the jury on the law of CCE; (3) erred in admitting evidence of a phone conversation to the jury because its prejudicial nature outweighed its probative value; (4) erred in enhancing his offense level for possessing a firearm.

Calia argues the district court: (1) erred in entering judgment against him on his convictions because the Government presented insufficient evidence; (2) erred in enhancing his offense level for playing a managerial role in the conspiracy.

Montanye argues the district court: (1) erred by failing to sever his trial from the other defendants; (2) erred by failing to submit his requested defense instruction to the jury; (3) erred by placing undue emphasis in the jury instructions on his role in the conspiracy; (4) erred by instructing the jury that the Government did not have to prove that appellants agreed to distribute a particular type of controlled substance.

Glorioso argues that the district court: (1) erred in permitting the Government to present rebuttal evidence against him when he did not present a defense; (2) erred in entering judgment against him because the Government presented insufficient evidence.

## I. BACKGROUND

The Government's indictment alleged the following:

I. From February 1, 1988 until April 6, 1990, Bruton, Calia, Glorioso, Montanye, Ramon Leal, Charles Leal, Carl Hathcock, Kenneth Dufrenne, and Cecil Evans conspired to manufacture, possess, and distribute controlled substances in violation of 21 U.S.C.A. § 841(a) (West Supp.1991).

II. From February 1, 1988 to April 6, 1990, Bruton operated as a leader of a continuing criminal enterprise in violation of 21 U.S.C.A. § 848.

III. On August 8, 1989, Bruton and Calia did knowingly possess with intent to distribute approximately seventy pounds of marijuana in violation of 21 U.S.C.A. § 841(a).

IV. On February 18, 1990, Bruton did knowingly use a telephone to facilitate the conspiracy to distribute drugs by discussing the conspiracy on the phone with Ramon Leal, in violation of 21 U.S.C.A. § 843(b).

V. On February 19, 1990, Bruton and Thomas Cullen did attempt to knowingly and intentionally manufacture methamphetamine by directing Montanye to purchase laboratory glassware for use in the production of methamphetamine.

VI. On February 19, 1990, Bruton, Calia, Glorioso, Thomas Cullen and Ramon Leal did possess with intent to distribute 198 pounds of marijuana in violation of 21 U.S.C.A. § 841(a).

VII. On March 1, 1990, Bruton, Thomas Cullen, Montanye and Dennis Sessions did attempt to manufacture methamphetamine by possessing laboratory glassware intended for the production of methamphetamine, in violation of 21 U.S.C.A. §§ 841(a)(1), 843.

VIII. On March 8, 1990, Bruton did knowingly use a telephone to facilitate the conspiracy to distribute drugs by discussing the conspiracy on the phone with Ramon Leal, in violation of 21 U.S.C.A. § 843(b).

IX. On March 10, 1990, Bruton, Carl Hathcock, Ramon Leal and Charles Leal did possess with intent to distribute approximately 207 pounds of marijuana, in violation of 21 U.S.C.A. § 841(a).

X. On March 13, 1990, Bruton did knowingly facilitate the conspiracy to distribute drugs by leaving a telephone message with Thomas Cullen regarding the conspiracy, in violation of 21 U.S.C.A. § 843(b).

XI. On March 28, 1990, Bruton and Thomas Cullen did knowingly manufacture methamphetamine, in violation of 21 U.S.C.A. § 841(a).

XII. On April 5, 1990, at approximately 7:40 a.m., Bruton did knowingly use a telephone to facilitate the conspiracy to distribute drugs by discussing the conspiracy on the phone with Ramon Leal, in violation of 21 U.S.C.A. § 843(b).

XIII. On April 5, 1990, at approximately 11:32 a.m., Bruton did knowingly use a

telephone to facilitate the conspiracy to distribute drugs by discussing the conspiracy on the phone with Carl Hathcock, in violation of 21 U.S.C.A. § 843(b).

XIV. On April 6, 1990, Bruton and Thomas Cullen did knowingly possess with intent to distribute fifty-five grams of methamphetamine, in violation of 21 U.S.C.A. § 841(a).

According to the Government, Bruton simultaneously supervised a marijuana smuggling operation, and a methamphetamine laboratory. Thomas Cullen worked as the lab's chemist, manufacturing methamphetamine with equipment and materials provided by Bruton.[1] Montanye aided Bruton by delivering glassware for the lab. Ramon Leal served as Bruton's supplier of marijuana from Texas.[2] John Calia worked primarily as Bruton's partner in the marijuana operation until Bruton cut him out in March 1990, and substituted Carl Hathcock as his partner.[3] Glorioso aided Bruton and Calia in distributing the marijuana.

Based on a number of tips that Bruton and Calia were stealing jewelry, the FBI began surveillance of them in July 1989. However, the FBI grew suspicious that Bruton and Calia also dealt drugs. The FBI heightened its surveillance when the DEA arrested Jack Mikulenka in September of 1989 for attempting to purchase 100 pounds of marijuana from one of its agents. Mikulenka cooperated, telling the FBI that he had worked as a courier delivering marijuana in large quantities from Cecil Evans, an infamous criminal in Texas,[4] to George Bruton in Kansas City. Mikulenka admitted delivering seventy pounds of marijuana to Bruton in August of 1989. (Count III) After gathering evidence for several months, the FBI obtained a court order to tap Bruton's and Calia's cellular phone conversations in February of 1990.

A. Marijuana

In mid-February, Bruton called Ramon Leal in Texas. Leal told Bruton "the count is 198.5." (Count IV) Bruton then called Calia and told him "the number is 199, actually 198.5." Calia called Glorioso, who asked Calia "how we coming down on that?" Calia responded, "well, it'll cost me about one hundred and ninety nine dollars for that last material."

The next day, Leal arrived in Kansas City. That night, Calia and Bruton met at Glorioso's house, and Bruton then left in Calia's car for Leal's hotel. Bruton went inside the hotel, returned several minutes later and drove to Glorioso's house using Leal's car. Bruton stayed at Glorioso's for half an hour, and then returned to the hotel parking lot. Bruton went inside the hotel, and then drove Calia's car back to Glorioso's house. (Count VI)

In March, Leal told Bruton over the phone "it's two-o-seven, or two-o-nine...." Bruton relayed this number on the phone to Carl Hathcock. Three days later, Bruton met Leal at the hotel again, repeating the ritual of the February meeting, except that Bruton worked with Hathcock instead of Calia and Glorioso.

On April 5, 1990, Bruton called Leal in Texas, and Leal told him that the count is "two point four one and a half." (Count XII) The following day, Leal and his son, Charles, left their home in Texas and began driving north on I–35 towards Kansas City. FBI agents pulled the Leals over on the highway. A search of their car revealed 243 pounds of marijuana packaged in plastic-wrapped bricks, and three kilos of cocaine. Hours later, FBI agents arrested Bruton and Hathcock as they left a Kansas City Motel 6 in Hathcock's car. The FBI found $5,894 in cash on Bruton and $223,340 in cash in the trunk of Hathcock's car. (Count XIV)

1. Cullen was a fugitive at the time of trial, and has yet to be apprehended.

2. The district court sentenced Leal to ten years in prison for his participation in the conspiracy. Leal appealed his conviction and sentence, but died before this case was submitted.

3. Hathcock was also fugitive at the time of trial.

4. In 1969, Evans stole the MacFarland diamond, a 50–carat emerald cut broach, from the Whitney Museum in San Antonio.

## B. Methamphetamine

In February 1990, the FBI observed Bruton driving his black pick-up filled with garbage bags from 2401 NW 68th St. to a private landfill outside of Kansas City. The bags contained empty containers of various precursor chemicals that could be used in the manufacture of methamphetamine and broken pieces of laboratory glassware coated with precursor chemicals.

Several days later, Bruton called Herbert Montanye, in Bountiful, Utah, and asked him to pick up some "equipment." Montanye agreed. Bruton called him back the next day, and put Thomas Cullen on the phone. Cullen gave Montanye a long list of various pieces of laboratory glassware to purchase from Technical Glass Service in Boise, Idaho, and deliver to Cullen and Bruton in Kansas City. (Count V) On March 1, 1990, FBI agents observed Cullen and Bruton drive to an underground storage facility outside Kansas City and meet Montanye, who drove from Utah in a rented Cadillac. (Count VII)

On April 6, the FBI searched the residence at 2401 NW 68th St., a location Cullen had frequented and Bruton had visited several times. The FBI found a clandestine methamphetamine lab, and fifty-five grams of methamphetamine. (Count XV) DEA chemist John Meyers examined the lab and estimated that it had the capacity to produce 37.5 kilos of methamphetamine, assuming that a chemist used all the precursor chemicals on site.

The jury found Bruton guilty of all counts, and the district court gave him two concurrent sentences of life without parole for the conspiracy and CCE counts, respectively.[5]

The jury found Calia guilty of conspiracy to distribute marijuana and methamphetamine, and also guilty of Count VI, possessing marijuana with intent to distribute. The jury acquitted Calia of count III. The district court sentenced him to two concurrent thirty-three year terms in prison for Counts I and VI.

The jury found Montanye guilty of conspiracy, but only with respect to manufacturing methamphetamine, and of attempting to manufacture methamphetamine. The district court sentenced Montanye to two concurrent thirty-year sentences.

The jury found Glorioso guilty of conspiracy, but only with respect to smuggling marijuana, and of possessing marijuana with intent to distribute. The district court sentenced Glorioso to seven years.

## II. DISCUSSION

### A. Joinder

■ At trial, Montanye moved for severance, arguing that a jury should try his case separately from the offenses against the other defendants. The district court denied the motion. Because he aided only the methamphetamine branch of the conspiracy, Montanye argues the district court prejudiced him by trying his case along with the defendants who distributed marijuana. We will not reverse a failure to grant severance absent an abuse of discretion causing clear prejudice. *United States v. Payne*, 923 F.2d 595, 597 (8th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 2830, 115 L.Ed.2d 1000 (1991). Federal Rule of Criminal Procedure 8(b) provides that "[t]wo or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." Conspiracy defendants should be tried together, particularly when the Government's case is based on the same evidence. *Payne*, 923 F.2d at 597. The Government presented evidence proving that Bruton, Calia and Montanye conspired together to attempt to manufacture methamphetamine. Therefore, the district court did not err in trying Montanye with his alleged co-conspirators.

### B. Hearsay

■ Appellants question the district court's admission into evidence of several

---

5. The district court also gave Bruton a concurrent sentence of 40 years in prison for Counts V, VII, XI, XIV and XV, a concurrent sentence of 20 years in prison for Counts II, VI and IX, and a concurrent sentence of four years in prison for Counts IV, VIII, X, XII and XIII.

incriminating statements by co-conspirator Carl Hathcock. Hathcock, a fugitive, did not testify. The district court admitted Hathcock's statements through the testimony of another conspirator, Kenneth Dufrenne. Hathcock asked Dufrenne to "find a market" for the marijuana Hathcock planned on purchasing from Bruton. Hathcock told Dufrenne that Bruton's partner was a "big fat slob," who Dufrenne later learned was Calia. Hathcock stated that Calia asked to borrow $250,000 from him to finance a purchase of marijuana. Hathcock also said that after Bruton and Calia purchased marijuana from their "Mexican connection" (Leal), they would "turn it over to one the Dagos named Mr. Glorioso."

· Bruton, Calia and Glorioso acknowledge that, to the extent Hathcock spoke from personal knowledge, statements made by Hathcock to Dufrenne are not hearsay under the co-conspirator exception of Federal Rule of Evidence 801(d)(2)(E). However, they argue that the district court never determined whether Hathcock made his declarations based on observation, or based on hearsay declarations from other people.

In *United States v. Lenfesty*, 923 F.2d 1293 (8th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 1602, 113 L.Ed.2d 665 (1991), this court permitted hearsay within hearsay statements of conspirators, under Rule 805, when all the statements were made by co-conspirators, *id.* at 1296–97. Hathcock may not have always spoken from personal knowledge. However, Hathcock did base his statements on what he heard from other conspirators. The district court did not err in admitting Dufrenne's testimony.

### C. Relevancy

██ Bruton challenges on relevancy grounds the district court's admission into evidence of a tape recording depicting a sexually explicit conversation between Bruton and Hathcock. Bruton failed to object at trial, and therefore we review only for

plain error that would cause a miscarriage of justice. During the taped conversation, Bruton and Hathcock discuss hiring a prostitute. In addition, Bruton and Hathcock exchanged information on the arrangement of an upcoming drug deal. The admission of this evidence fell within the discretion of the district court. Fed.R.Evid. 404(b).

### D. Single v. Multiple Conspiracies

██ Appellants argue that while the Government alleged a single conspiracy in the indictment, the Government proved two conspiracies at trial: one to distribute marijuana and another to manufacture and distribute methamphetamine. *See Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946).

The jury found that while each defendant participated in different aspects of the scheme from the others,[6] one overall conspiracy existed. We set aside this finding only if the record does not "contain[ ] evidence from which the·jury could find one overall agreement to commit an illegal act." *United States v. Regan*, 940 F.2d 1134, 1135 (8th Cir.1991).

We hold that sufficient evidence supported a single conspiracy with regard to Bruton and Calia. A single conspiracy may exist when one or two members of the scheme direct all actions that take place. *United States v. Askew*, 958 F.2d 806, 810 (8th Cir.1992). The Government proved that Bruton and Calia acted as key players who directed the actions of the methamphetamine and marijuana branches of the conspiracy. Therefore, all the appellants participated in a conspiracy between at least two people: Bruton and Calia.

██ Our analysis does not end, however, for we must assess whether Montanye and Glorioso agreed to join in Bruton and Calia's conspiracy. Joining a conspiracy means joining not a group, but an agreement. *See United States v. Town-*

---

**6.** The jury responded to a special interrogatory asking them to find which part of the conspiracy each defendant aided. The jury found:
 1. Bruton distributed marijuana, cocaine and methamphetamine.

2. Calia distributed marijuana and methamphetamine.
3. Glorioso distributed marijuana.
4. Montanye aided the methamphetamine operation.

*send,* 924 F.2d 1385, 1390 (7th Cir.1991). Therefore, we must " 'determine what kind of agreement or understanding existed as to each defendant.' " *United States v. Glenn,* 828 F.2d 855, 857 (1st Cir.1987) (quoting *United States v. Borelli,* 336 F.2d 376, 384 (2d Cir.1964), *cert. denied,* 379 U.S. 960, 85 S.Ct. 647, 13 L.Ed.2d 555 (1965) ).

Glorioso argues that he did not join the overall conspiracy, but only the marijuana smuggling scheme. We disagree. While at Glorioso's house, Bruton called Cullen and said he would "need 32" shortly before Bruton purchased marijuana from Leal. Cullen arrived at Glorioso's a few minutes later carrying a small bag into the house, which the jury could have inferred contained money for the marijuana buy. From this evidence, the jury could infer that Glorioso knew that he had joined a conspiracy to manufacture methamphetamine and distribute marijuana.

We cannot say the same for Montanye. Although Montanye may have knowingly joined a conspiracy to manufacture methamphetamine, no evidence exists to infer that Montanye knew that he was also joining a conspiracy to purchase and distribute marijuana. Montanye's sole act in the conspiracy was his delivery of glassware. In none of the phone conversations taped by the Government did Montanye exhibit knowledge of Bruton's marijuana dealings. Bruton did not speak to Montanye about his marijuana purchases in the code that he used when speaking with Leal, Calia and Glorioso. Thus, Montanye participated in a different conspiracy from the other defendants. *See Glenn,* 828 F.2d at 859 (holding that variance existed where defendant charged with conspiring to distribute both marijuana and hashish only participated and knew about hashish operation).

■■■■ A variance will only result in reversal when it prejudices a defendant's substantive rights. *United States v. Roark,* 924 F.2d 1426, 1429 (8th Cir.1991). Sufficient evidence existed to convict Montanye of participating in a conspiracy to

manufacture methamphetamine. *See infra.* The district court did not use evidence of the marijuana conspiracy in sentencing Montanye, thus avoiding any prejudice to him.

### E. Rebuttal Testimony

■■■ Glorioso argues the district court erred in admitting phone conversations as rebuttal evidence because he did not put on a defense. Here, the Government simply requested to re-present evidence the jury had already heard. The admission of the rebuttal evidence amounted to harmless error at best.

### F. Bruton's Instructions

■■■ Bruton challenges the district court's instructions regarding Count II, in which the Government alleged that Bruton engaged in a continuing criminal enterprise (CCE) in violation of 21 U.S.C.A. § 848 (West Supp.1991). Because Bruton failed to object to the instructions at trial, we review the instructions only for plain error. *United States v. Mason,* 902 F.2d 1314, 1316 (8th Cir.1990). We will apply the plain error rule to jury instructions only to prevent a miscarriage of justice. *Id.* We have considered several of Bruton's claims and determine that they do not present issues for reversal as plain error.

■■■■ Bruton argues that the district court erred in failing to instruct the jury that it must be unanimous in finding which five people the defendant acted "in concert with" in running the enterprise. A general unanimity instruction usually protects a defendant's sixth amendment right to a unanimous verdict. *United States v. Hiland,* 909 F.2d 1114, 1139 (8th Cir.1990). A district court may have to give a specific unanimity instruction when a risk of jury confusion exists. *Id.* Although the Government presented a large volume of evidence in this case, that volume would not by itself confuse the jury as to which five people Bruton managed or supervised. The district court's instructions do not represent a gross miscarriage of justice.[7]

**7.** Nearly every circuit has held that a district court does not need to instruct the jury specifi-

## G. Montanye's Instructions

Montanye argues the district court erred in rejecting his proposed instruction on the law of conspiracy. Because he only delivered glassware, Montanye requested an instruction stating:

> The government must prove defendant Montanye knew of the existence of a conspiracy to manufacture, possess and distribute methamphetamine, marijuana and cocaine. Without such knowledge, he cannot be found guilty even if his acts furthered the conspiracy. One does not become a party to a conspiracy by aiding and abetting, through sales of supplies or otherwise, unless he knows of the conspiracy. The inference of such knowledge cannot be drawn merely from knowledge the buyer will use the goods illegally.

Addendum to Appellant Montanye's Br. at 17.

The district court rejected this instruction, stating that it would "amount to an acquittal." [8] The district court has wide discretion in formulating its charge to the jury. *United States v. Figueroa*, 900 F.2d 1211, 1217 (8th Cir.), *cert. denied*, 496 U.S. 942, 110 S.Ct. 3228, 110 L.Ed.2d 675 (1990). However, defendants shall receive a theory of defense if a timely request is made, the evidence supports the proffered instruction, and the instruction correctly states the law. *United States v. Casperson*, 773 F.2d 216, 223 (8th Cir.1985).

Montanye relies on *United States v. Falcone*, 311 U.S. 205, 210, 61 S.Ct. 204, 206, 85 L.Ed. 128 (1940), and *United States v. Direct Sales*, 319 U.S. 703, 709, 63 S.Ct. 1265, 1268, 87 L.Ed. 1674 (1943), to argue that he did not become a party to the conspiracy, even if he knew that the glassware he was delivering would be used for an illegal purpose.

In *Falcone*, the defendants were sugar jobbers who sold sugar to wholesalers who then resold it to illegal distilleries. The Court held that merely because the jobbers knew that their sugar was going to illegal distilleries did not make them part of the conspiracy to produce illegal spirits. *Falcone*, 311 U.S. at 210, 61 S.Ct. at 206. The Court in *Direct Sales* rephrased the holding in *Falcone*, stating that "one does not become a party to a conspiracy by aiding and abetting it, through sales of supplies or otherwise, unless he knows of the conspiracy; and the inference of such knowledge cannot be drawn merely from knowledge the buyer will use the goods illegally." *Direct Sales*, 319 U.S. at 709, 63 S.Ct. at 1268.

In *Direct Sales*, the defendant was a corporation that sold morphine, a controlled substance, in large quantities to a small-town doctor who purchased far more than he could possibly prescribe to his patients. In affirming the conspiracy conviction of the corporation, the Court distinguished *Falcone*, noting the difference between

---

cally that it must unanimously decide which five people a defendant managed in a CCE. *E.g., United States v. English*, 925 F.2d 154, 159 (6th Cir.), *cert. denied*, — U.S. —, 111 S.Ct. 2812, 115 L.Ed.2d 984 (1991); *United States v. Linn*, 889 F.2d 1369, 1374 (5th Cir.1989), *cert. denied*, — U.S. —, 111 S.Ct. 43, 112 L.Ed.2d 19 (1990); *United States v. Jackson*, 879 F.2d 85, 87–90 (3d Cir.1989); *United States v. Tarvers*, 833 F.2d 1068, 1073–75 (1st Cir.1987). *But see United States v. Jerome*, 942 F.2d 1328, 1331 (9th Cir.1991) (holding that unanimity is required).

**8.** The district court gave the jury the following instruction on the law of conspiracy to apply to all the defendants:

> All of the defendants are charged with the crime of criminal conspiracy in Count one of the indictment. This crime has three essential elements, which are:

> **One,** that on or after February 1988, two or more persons, including defendant Bruton, reached an agreement or understanding to distribute illegal drugs;

> **Two,** the defendant you are considering voluntarily and intentionally joined in the conspiracy, either at the time it was first reached or at some later time while it was still in effect; and

> **Three,** at the time the defendant joined in the conspiracy he knew the purpose of the agreement or understanding.

> To convict a defendant of criminal conspiracy, the Government must prove each of these essential elements beyond a reasonable doubt as to the defendant under consideration.

Instruction No. K, II Joint App. at 438.

vendors who sell consumer goods and those who sell regulated, or suspicious goods:

> The difference is like that between toy pistols or hunting-rifles and machine guns. All articles of commerce may be put to illegal ends. But all do not have inherently the same susceptibility to harmful and illegal use. Nor, by the same token, do all embody the same capacity, from their very nature, for giving the seller notice the buyer will use them unlawfully....

> This difference is important for two purposes. One is for making certain that the seller knows the buyer's intended illegal use. The other is to show that by the sale he intends to further, promote and cooperate in it. This intent, when given effect by overt act, is the gist of conspiracy.

*Id.* at 710–11, 63 S.Ct. at 1269.

When a vendor sells sophisticated laboratory glassware to private individuals, he might suspect the motives of his customers. In this case, Montanye not only suspected, but knew with certainty before delivering the glassware that he would be aiding an illegal conspiracy. Bruton told him to use a false name when purchasing the glassware, and to avoid being followed by police when driving to the glassware factory. Montanye also behaved as if he knew he was breaking the law. Montanye suggested to Bruton that the delivery should take place between two connecting hotel rooms to avoid detection. When highway patrolmen in two states pulled Montanye over because his rental car did not have its temporary plates properly displayed, Montanye lied when questioned about his destination, and appeared extremely nervous. Because the jury could find with certainty that Montanye knew he was aiding an illegal conspiracy, the evidence did not support a *Falcone* instruction.

■ Montanye next argues that the district court denied him a fair trial because it prejudiced the jury against him by delivering a conspiracy instruction that stated:

> [I]t is not necessary that a person agree to play any particular part in carrying out the conspiracy. A person may become a member of a conspiracy even if that person agrees to play only a minor part in the conspiracy, such as driving a car or loading needed equipment, as long as you believe, beyond a reasonable doubt, that the person you are considering had an understanding of the unlawful nature of the plan and voluntarily and intentionally joined in it.

Instruction No. L, II Joint App. at 439–40.

Montanye contends that the instruction's reference to "loading needed equipment" referred too directly to his conduct, and compelled the jury to convict him. We disagree. The district court may instruct the jury using concrete facts from the case to clarify the law's application. *United States v. Feldhacker,* 849 F.2d 293, 297 (8th Cir.1988).

■ Montanye next challenges the district court's instructions regarding his conviction of aiding and abetting in the attempted manufacture of a controlled substance. Montanye argues that the district court should have told the jury that in order to convict him of attempted manufacturing, it must find him guilty of attempting to manufacture a particular controlled substance. However, a defendant need not possess the specific intent to manufacture a particular controlled substance as long as he had the mens rea to violate the controlled substances act. *E.g., United States v. Herrero,* 893 F.2d 1512, 1535 (7th Cir.), *cert. denied,* 496 U.S. 927, 110 S.Ct. 2623, 110 L.Ed.2d 644 (1990).

■ Finally, Montanye argues that the district court erroneously instructed the jury on what constitutes a "substantial step" in an attempt. The district court told the jury that to convict Montanye of attempting to manufacture methamphetamine, it must find that Montanye had taken a "substantial step" towards the manufacture of methamphetamine. The district court instructed the jury:

> The term "substantial step" means conduct that is significant in scope as distinguished from some relatively insig-

nificant, insubstantial or trivial action. With respect to defendants Montanye and Sessions, the acquisition of glassware in Idaho may not be considered a substantial step in an attempt to manufacture methamphetamine because any such acquisition occurred outside the Kansas City area and not at the time alleged.

Instruction No. T, II Joint App. at 449–50.

Montanye contends that this instruction incorrectly defines a "substantial step," arguing that such an act must be "more than mere preparation." We disagree. A criminal defendant is not entitled to a particularly worded instruction where the instruction given by the trial court adequately covers the substance of the requested instruction. *United States v. Wagner*, 884 F.2d 1090, 1096 (8th Cir.1989), *cert. denied*, 494 U.S. 1088, 110 S.Ct. 1829, 108 L.Ed.2d 958 (1990). No substantial difference exists between conduct that is "significant in scope," and conduct that is "beyond mere preparation." The instruction proffered by the district court gave Montanye's counsel an adequate opportunity to advance the theory that Montanye did not perform a substantial step toward manufacturing methamphetamine.

## H. Sufficiency of the Evidence

■■■■ Appellants challenge the sufficiency of the evidence supporting their convictions. In evaluating their arguments, we must give the Government the benefit of all reasonable inferences that the jury could draw from the evidence. *United States v. Watson*, 952 F.2d 982, 987 (8th Cir.1991). This court upholds a conviction if a reasonable jury could have found guilt beyond a reasonable doubt, and recognizes that the evidence need not exclude every reasonable hypothesis other than guilt.

*United States v. Haren*, 952 F.2d 190, 194 (8th Cir.1991).

### 1. Continuing Criminal Enterprise

■■■■ Bruton argues the Government failed to present sufficient evidence to convict him of conducting a continuing criminal enterprise (CCE).[9] Bruton contends that the Government failed to prove that he organized or supervised at least five other people. Rather, Bruton submits that he was a mere middleman in two different narcotics operations.

Bruton faces a difficult challenge, because " '[t]he basic outlines of the . . . management element have been liberally construed.' " *United States v. Roley*, 893 F.2d 992, 994 (8th Cir.1990) (quoting *United States v. Possick*, 849 F.2d 332, 335 (8th Cir.1988)). In essence, the management element is established by "demonstrating that the defendant exerted some type of influence over another individual as exemplified by that individual's compliance with the defendant's directions, instructions, or terms." *United States v. Possick*, 849 F.2d 332, 336 (8th Cir.1988).

Our study of the record reveals at least five people that Bruton managed or supervised: (1) Jack Mikulenka; (2) John Calia; (3) John Glorioso; (4) Herbert Montanye; (5) Carl Hathcock. The Government presented sufficient evidence supporting Bruton's conviction of CCE.

### 2. Conspiracy and related counts

■■■■ Appellants all challenge the sufficiency of the evidence supporting their conspiracy convictions, and their convictions for the substantive offenses committed during the conspiracy. To convict appellants of conspiracy, the Government had to prove that they entered into an agree-

---

**9.** Title 21, Section 848(c) of the United States Code defines a continuing criminal enterprise as follows:

For purposes of subsection (a) of this section, a person is engaged in a continuing criminal enterprise if—
(1) he violates any provision of this subchapter or subchapter II of this chapter the punishment for which is a felony, and

(2) such violation is a part of a continuing series of violations of this subchapter or subchapter II of this chapter—
(A) which are undertaken by such person in concert with five or more other persons with respect to whom such person occupies a position of organizer, a supervisory position, or any other position of management, and
(B) from which such person obtains substantial income or resources.

ment with at least one other person and that the agreement had as its objective a violation of the law. *United States v. Maejia*, 928 F.2d 810, 813 (8th Cir.1991). The Government may rely wholly on circumstantial evidence to prove the existence of a conspiracy. *United States v. Schmidt*, 922 F.2d 1365, 1369 (8th Cir.1991). Members of the conspiracy are liable for all substantive crimes committed by their co-conspirators in furtherance of the conspiracy that were reasonably foreseeable to them. *United States v. Williams*, 902 F.2d 675, 678 (8th Cir.1990) (citing *Pinkerton v. United States*, 328 U.S. 640, 645–48, 66 S.Ct. 1180, 1183–84, 90 L.Ed. 1489 (1946)).

Bruton challenges the sufficiency of the evidence supporting all his remaining counts. In proving Count II, engaging in a CCE, the Government presented more than sufficient proof to convict Bruton of conspiracy.[10] Count III, alleging Bruton acquired marijuana from Jack Mikulenka, is supported directly by Mikulenka's testimony. Bruton argues Mikulenka did not testify credibly. We will not reverse a conviction resting on the testimony of a co-conspirator unless no reasonable juror could believe the witness's testimony. *United States v. Jackson*, 959 F.2d 81, 82 (8th Cir.1992). Several pieces of evidence, such as phone records and rental car receipts, document Mikulenka's testimony that he drove from Texas to Kansas City to deliver marijuana. A reasonable jury could have believed Mikulenka. Therefore, sufficient evidence supports Count III.

▪ Bruton challenges Counts VI, IX and XIV, alleging that he possessed marijuana with intent to distribute. Bruton argues that FBI agents never witnessed marijuana in his presence. However, constructive possession, supported by circumstantial evidence, will support a conviction of possession with intent to distribute. *United States v. Schubel*, 912 F.2d 952, 955 (8th Cir.1990). Before each visit by

Leal, Bruton called Leal, who told Bruton over the phone "the count." The count Leal gave Bruton on April 5 almost exactly matched the pounds of marijuana police found in Leal's car later that day while he was driving north.[11] Additionally, the FBI found a huge amount of cash in the car driven by Bruton and Hathcock. The jury could use these facts to deduce that when Leal told Bruton "the count" in March, February and April, he really meant "I will be bringing $X$ pounds of marijuana to sell to you." After each of those phone calls, Bruton visited a hotel where Leal stayed, drove Leal's car to a different location, and then returned Leal's car to the hotel. The jury had sufficient circumstantial proof to infer that Bruton purchased large amounts of marijuana from Leal on February 19, and March 10, and was preparing to purchase more on April 6.

Counts IV, VIII, X, XII and XIII allege that Bruton discussed the conspiracy on the telephone. The jury could have reasonably inferred from the facts discussed above that Bruton was discussing the conspiracy on the phone with his co-conspirators during the conversations taped by the Government.

Count XI accused Bruton and Cullen of manufacturing methamphetamine on March 28, 1990. Bruton argues that he was never near the methamphetamine lab on that day, and therefore cannot be liable for Cullen's activities. However, Bruton knew Cullen was manufacturing methamphetamine on that day. Cullen called Bruton from the lab that day and told Bruton that he was "working." Bruton stated: "Yeah, well, when you get, uh, the fires put out, well, uh, come over." Additionally, Bruton aided the operation of the methamphetamine laboratory in several ways, indicating his responsibility for its product. Bruton delivered trash for the lab, stored chemicals for the lab at a different location, and ordered glassware for it. Thus,

---

10. This overlap resulting in the same evidence proving two offenses violates the Double Jeopardy clause of the fifth amendment, as we explain *infra* at 1346.

11. The FBI found that the marijuana seized from Leal's car weighed 243 pounds. The FBI's expert who performed the weighing stated that two different scales could probably weigh the marijuana as either being 241 or 243 pounds.

Bruton was liable both for Cullen's manufacture of methamphetamine, and for the methamphetamine found at the laboratory. The Government presented sufficient evidence supporting all of Bruton's convictions.

Calia challenges his conviction for Count I, conspiracy. Calia argues that the Government has shown only that he was present during several transactions, and not that he participated in the conspiracy. We disagree. Calia's conversations with Bruton indicate that Calia knew of Bruton's marijuana purchases from Leal. Calia's call to Glorioso telling him the amount of marijuana Leal was bringing furthered the conspiracy. From this evidence, the jury could reasonably have found Calia guilty of conspiracy.

Calia challenges Count VI, arguing that he was not present during the purchase of marijuana by Bruton from Leal on February 19, 1990. We disagree. The jury could have reasonably inferred that the following occurred on February 19 from the record: Calia drove to Glorioso's house that night and lent Bruton his car for Bruton to use in picking up marijuana from Leal. When Bruton returned from the hotel, he unloaded the marijuana at Glorioso's house while Calia and Glorioso were in the house.

Glorioso challenges his convictions for conspiracy, Count I, and possession of marijuana, Count VI, arguing the Government presented insufficient evidence. The evidence indicates that Glorioso at least allowed the other conspirators use of his house as a drop-off point for marijuana. Calia's conversation with Glorioso on February 19, in which Glorioso inquired as to how much marijuana Bruton would be purchasing, also provided ample circumstantial evidence from which the jury could infer Glorioso's guilt.

Montanye challenges his conviction for conspiracy, Count I, arguing that the Government presented insufficient evidence. Montanye argues that he merely delivered glassware, and did not know that doing so was illegal, or that he was joining a conspiracy. We disagree. As we discussed above, the Government presented strong evidence that Montanye knew of the conspiracy, and knew that his delivery of glassware was in furtherance of the conspiracy.

Montanye also challenges his conviction for attempted manufacturing of methamphetamine, Count VII, arguing that his delivery of glassware did not constitute a substantial step towards commission of the crime. The elements of an attempt are as follows: (1) an intent to engage in criminal conduct; (2) conduct constituting a "substantial step" towards commission of the substantive offense which strongly corroborates the actor's conduct. *United States v. Joyce*, 693 F.2d 838, 841 (8th Cir.1982). Whether a defendant's conduct amounts to a substantial step depends on the particular facts in the case at hand. *United States v. Wagner*, 884 F.2d 1090, 1097 (8th Cir.1989), *cert. denied*, 494 U.S. 1088, 110 S.Ct. 1829, 108 L.Ed.2d 958 (1990). This court has held that conduct consisting of ordering and receiving the equipment and chemicals necessary to manufacture methamphetamine constituted a substantial step towards manufacturing methamphetamine. *See Wagner*, 884 F.2d at 1096–97; *United States v. Felix*, 867 F.2d 1068, 1071–72 (8th Cir.1989); *United States v. Mazzella*, 768 F.2d 235, 239–40 (8th Cir.), *cert. denied*, 474 U.S. 1006, 106 S.Ct. 528, 88 L.Ed.2d 460 (1985). Possession of laboratory glassware, by itself, does not constitute a substantial step towards making methamphetamine. We have held that a defendant must at least obtain equipment *and* precursor chemicals before he may be convicted of attempt. *See Wagner*, 884 F.2d at 1096–97; *Felix*, 867 F.2d at 1071–72; *Mazzella*, 768 F.2d at 239–40. Montanye never possessed or intended to possess precursor chemicals. We therefore reverse Montanye's conviction for attempted manufacture of methamphetamine.

## I. Double Jeopardy

■ Bruton challenges his conspiracy and CCE convictions on the grounds that they penalize him twice for the same conduct, and therefore violate his freedom from double jeopardy under the fifth

amendment of the Constitution. We agree. Because we affirm both convictions on all other grounds, and both convictions arise out of the same conduct, they cannot both stand. *United States v. Duke*, 940 F.2d 1113, 1120 (8th Cir.1991). The Supreme Court in *Jeffers v. United States*, 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977), held with reference to the statutes dealt with here "that Congress did not intend to impose cumulative penalties under §§ 846 and 848." *Id.* at 157, 97 S.Ct. at 2220. The Government concedes the error.

J. Sentencing

■ We now examine Montanye's sentence of thirty years in prison without parole. Montanye did not appeal his sentence. Normally, we deem a party's failure to raise or discuss an issue to be an abandonment of that issue. *Jasperson v. Purolator Courier Corp.*, 765 F.2d 736, 741 (8th Cir.1985). However, where a manifest injustice would occur as a result of a sentence in a criminal trial, this court may suspend the normal requirements of Federal Rule of Appellate Procedure 28(a) and consider an issue that would otherwise not properly be before this court. *See United States v. Olano*, 934 F.2d 1425, 1439 (9th Cir.1991); *Gramegna v. Johnson*, 846 F.2d 675, 677 (11th Cir.1988) (authored by Henley, J., sitting by designation); *United States v. Anderson*, 584 F.2d 849, 853 (6th Cir.1978).

■ The district court calculated Montanye's base offense level to be 38, finding Montanye responsible for all 37.5 kilos of methamphetamine that the lab operated by Bruton and Cullen was capable of producing. For Montanye to be sentenced for methamphetamine produced by his co-conspirators, the production of that methamphetamine must have been (1) in furtherance of the conspiracy and (2) reasonably foreseeable to Montanye. *United States v. North*, 900 F.2d 131, 133 (8th Cir.1990) (citing U.S.S.G. § 1B1.3, comment.). For activities of a co-conspirator to be reasonably foreseeable to a defendant, they must fall within the scope of the agreement between the defendant and the other conspirators. *See United States v. Edwards*, 945 F.2d 1387, 1393 (7th Cir. 1991). We must examine the agreement between Montanye and Bruton to determine whether Montanye should have been sentenced for the methamphetamine lab's potential yield of 37.5 kilos.

Montanye agreed to deliver glassware to Bruton from Utah. Evidence indicates that Montanye knew with certainty that he was aiding an illegal conspiracy. However, Montanye did not know how much or how little methamphetamine his co-conspirators would produce. Montanye never participated in the process of manufacturing or distributing the methamphetamine. The district court possessed insufficient evidence to find Montanye responsible for all of the methamphetamine produced. We hold that his thirty-year sentence for a simple delivery of glassware constitutes a gross miscarriage of justice. We remand Montanye's case for resentencing and suggest that resentencing be imposed consistent with the rationale of the Seventh Circuit in *Edwards*, and of this court in *North*.

■ Bruton challenges the district court's two-level enhancement of his offense level under U.S.S.G. § 2D1.1(b)(1) for "possession of a firearm during commission of the offense." We will reverse the district court's findings on this matter only for clear error. *United States v. Pou*, 953 F.2d 363 (8th Cir.1992). The Government moved for the firearm enhancement based on evidence it recovered from a storage facility while the trial of Bruton was taking place. The Government's search recovered an AKS 7.62mm assault rifle, a Tech 9mm semi-automatic pistol with a 50–round magazine, a .357 Magnum pistol, several jugs and jars filled with precursor chemicals, and the glassware that Montanye had delivered from Idaho. Bruton argues that no evidence connects him to the weapons found at this storage facility. To receive a firearm enhancement, a defendant need not actually have the weapon in hand; constructive ownership suffices. *United States v. Haren*, 952 F.2d 190, 198 (8th Cir.1991). A defendant "constructively owns" a firearm when he exercises " ' "ownership, dominion, or control" ' " over

the item itself, or ' "dominion over the premises." ' " *United States v. Luster,* 896 F.2d 1122, 1129 (8th Cir.1990) (quoting *United States v. Matra,* 841 F.2d 837, 840 (8th Cir.1988)).

The record suggests that Bruton exercised dominion over the premises of the storage area where the Government found weapons and precursor chemicals. A woman named "Pamela Witwicky" leased the storage unit. The owner of the storage facility identified this woman as Donna Sue Nelton, a woman who is a former girlfriend of Bruton's, and before that Calia's ex-wife. FBI agents observed Bruton visit the storage unit with various members of the conspiracy five times between July and November 1989. The FBI found the glassware Montanye delivered to Bruton in the same storage unit as the firearms. The district court did not err in finding that Bruton exercised dominion over the storage unit where the guns were found.

However, "[a] firearm's mere 'presence' is not sufficient to mandate application of the enhancement." *United States v. Khang,* 904 F.2d 1219, 1224 (8th Cir.1990). Application Note 3 to Section 2D1.1 of the Guidelines states that "[t]he adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." The FBI found the guns in the same storage shed that it found laboratory glass and precursor chemicals. The guns recovered were both semi-automatic weapons with large magazines. An expert testified at sentencing that only drug traffickers use those types of paramilitary weapons. Taking this evidence into account, we cannot hold that the district court clearly erred in finding that the weapons were connected with Bruton's offense.[12]

 Calia also challenges the district court's enhancement of his base offense level by three levels under § 3B1.1(b)

for being a manager in a criminal activity involving five or more people. Calia argues that the Government failed to show that he supervised anyone during the conspiracy. We will not disturb a finding that someone is a manager or supervisor unless the district court clearly erred. *United States v. Andersen,* 928 F.2d 243 (8th Cir. 1991). In determining whether a defendant served as a supervisor or manager of a crime, "the sentencing court may consider such factors as the nature of his participation in the offense, whether he recruited accomplices, the extent of his involvement in planning or organizing the offense, and the nature and scope of the illegal activity." *United States v. Maejia,* 928 F.2d 810, 816 (8th Cir.1991).

The record reveals that Calia participated extensively in the conspiracy, and gave orders to at least one conspirator. Bruton referred to Calia as his "partner" on several occasions in conversations with others. Calia called Glorioso to tell him when the purchases would take place and how much would be purchased. At two different times, Bruton asked Calia "how's Harry?" (a/k/a Glorioso). Calia would then tell Bruton when Harry would be "ready." From these facts, we hold that the district court did not clearly err in finding that Calia was a manager within the meaning of section 3B1.1(b) of the Guidelines.

### III. CONCLUSION

We affirm, except that we remand Bruton's case, No. 91–2028, for the district court to vacate Bruton's conviction for either Count I or Count II, we reverse Montanye's (No. 91–1703) conviction for attempted manufacturing of methamphetamine, and we remand Montanye's case for resentencing.

FAGG, Circuit Judge, concurring and dissenting.

I disagree with the court's decision to reverse Montanye's conviction on Count VII for attempt to manufacture methamphetamine, *ante* at 1346, and the court's

---

12. Jack Mikulenka's testimony provides an independent basis for affirming the weapons enhancement. Mikulenka testified that when he delivered marijuana to Bruton in August 1989, he witnessed a 9mm semi-automatic pistol lying on a coffee table in the room where he discussed the terms of the purchase with Bruton.

decision to vacate Montanye's conspiracy sentence on grounds not raised on appeal, *ante* at 1347–48. Otherwise, I concur in the court's opinion.

Order.

July 30, 1992.

The suggestion for rehearing en banc is granted. The judgment and opinion filed by the panel are vacated.

This case will be set for argument before the court en banc at a later date.