UNITED STATES of America, Appellee,

v.

**Micheal L. GRUENBERG, Appellant.**

UNITED STATES of America, Appellee,

v.

**Eugene I. GRUENBERG, Appellant.**

**Nos. 91–1729, 91–1732.**

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 12, 1992.

Decided March 31, 1993.

Rehearing Denied in
No. 91–1732 May 12, 1993.

Rehearing Denied in
No. 91–1729 May 17, 1993.

10. *See supra* note 3.

Carolyn M. Conway, argued, Boston, MA, for appellant in No. 91–1729.

Mark Wernick, argued, Minneapolis, MN, for appellant in No. 91–1732.

John Michael Lee, Asst. U.S. Atty., argued, Minneapolis, MN, for appellee.

Before McMILLIAN, MAGILL and HANSEN, Circuit Judges.

HANSEN, Circuit Judge.

Eugene I. Gruenberg and Micheal J. Gruenberg were charged in a 32–count indictment alleging wire fraud, interstate transportation of stolen property, and securities fraud. After an 88–day trial, the jury convicted both of them. Both defendants appeal and allege numerous trial errors. We affirm.

## I. Facts

In 1981, Eugene Gruenberg and his son, Micheal Gruenberg, formed Endotronics, Inc. (ENDO), a corporation that manufactured and sold biochemical culturing instruments. These culturing instruments enable scientists to grow and maintain both human and animal cells for research purposes.

In 1983, ENDO's common stock was being traded on the NASDAQ over-the-counter market. The company soon began to experience rapid growth as evidenced by the sales figures and the price of its stock. In fiscal years 1984, 1985, and 1986, ENDO's sales figures increased from $156,000 to $5.7 million to $11.5 million. The stock price increased from $6 per share in 1984 to nearly $30 in 1986. During this time period, the total market value of the Gruenbergs' stock in the company rose from $3 million in 1984 to approximately $52 million in 1986.

In 1985, ENDO created a wholly owned marketing subsidiary located in Tokyo, Japan, called Endotronics Far East (EFE). Micheal Gruenberg assumed primary responsibility for EFE. The goal of EFE was to sell the culturing instruments to Japanese distributors who would in turn resell the instruments to eventual users. According to ENDO policy, the distributors assumed the risk of loss if they were unable to resell the instruments. The two primary Japanese distributors that supposedly purchased the instruments from ENDO were WakenYaku Company, Ltd. (Waken) and Yamaha, Inc. (Yamaha).

Unbeknownst to the public, the Gruenbergs were fraudulently inflating their corporation's sales figures in order to artificially inflate the price of its stock. They induced Japanese distributors to submit false purchase orders for culturing instruments by assuring the distributors that their purchase orders did not obligate the distributors to pay any money. For the Japanese distributors' participation in this fraudulent scheme, the Gruenbergs paid them money. As a result, sales figures continued to increase on ENDO's financial books, which in turn caused the price of ENDO stock to increase. By pledging their stock as collateral, the Gruenbergs borrowed substantial sums of money from American financial lending institutions. On occasion, the Gruenbergs would then transfer money to Robert Howe, an accomplice, who would purchase ENDO's accounts receivable. In effect, ENDO was buying its own culturing instruments. The end result: ENDO looked to the public like a thriving new international biochemical company.

In late 1986 and early 1987, the Gruenbergs' fraudulent scheme began to unravel. The national financial press began to investigate and raise questions about ENDO's operation. As a result, the price of ENDO stock began to decrease. Financial institutions began to "call due" their loans and the Gruenbergs eventually were unable to borrow any additional money. Several law enforcement agencies also began to investigate ENDO. By March 31, 1987, the price of ENDO stock had plummeted to $1.25 per share.

On July 26, 1989, the Gruenbergs were indicted and charged with wire fraud in violation of 18 U.S.C. § 1343, interstate transportation of stolen property in violation of 18 U.S.C. § 2314, and securities fraud in violation of 15 U.S.C. § 78j(b), 78f(f), and 78m(a). The jury found Eugene Gruenberg guilty on two wire fraud counts, one interstate transportation count, and nine of the twelve securities fraud counts. The jury also found Micheal Gruenberg guilty on 14 of the 15 wire fraud counts, three interstate transportation counts, and 11 of the 12 securities fraud counts. The district court[1] sentenced Eugene Gruenberg to a 40-month term of imprisonment and Micheal to a 120-month term of imprisonment. Both defendants appeal and allege numerous trial errors in a "manner reminiscent of an all-out attack on a wagon train. We have

---

1. The Honorable Diana E. Murphy, United States District Judge for the District of Minnesota.

managed to pluck [three] arrows from amidst the war whoops." *United States v. Tardiff,* 969 F.2d 1283, 1285 (1st Cir.1992) (Selya, J.).

## II.  Discussion

The three arrows that we have plucked which are embedded closest to the new trial/reversal target concern the following issues: (1) the willful blindness instruction; (2) the failure to give a specific unanimity instruction; and (3) the Rule 10b–5 jury instruction. We discuss these issues in sequence.

### A.  Willful Blindness Instruction

Eugene Gruenberg contends the district court erred in giving a willful blindness instruction. The instruction permitted the jury to find that Eugene had the requisite knowledge necessary to commit the crimes if it determined that he had deliberately avoided knowledge of the facts that would have made his conduct illegal. The instruction read:

> The element of knowledge may be satisfied by inferences drawn from proof that a defendant deliberately closed his eyes to what would otherwise have been obvious to him. A finding beyond reasonable doubt of a conscious purpose to avoid enlightenment would permit an inference of knowledge. Stated another way, a defendant's knowledge of a fact may be inferred from willful blindness to the existence of the fact. It is entirely up to you as to whether you find any deliberate closing of the eyes and the inference to be drawn from any such evidence. A showing of negligence or mistake is not sufficient to support a finding of willfulness or knowledge.

Jury Instruction, Trial Transcript (Tr.), Vol. 85, at 9900–01. He argues that the willful blindness instruction was not appropriate because there was no evidence that he deliberately avoided any knowledge.[2]

"A willful blindness instruction is appropriate when the defendant asserts 'a lack of guilty knowledge,' but the evidence 'support[s] an inference of deliberate ignorance.'" *United States v. Long,* 977 F.2d 1264, 1271 (8th Cir.1992) (citing *United States v. White,* 794 F.2d 367, 371 (8th Cir.1986) (internal quotation omitted)). "'[I]n reviewing a district court's decision to give a willful blindness instruction, we must review the evidence and any reasonable inference from that evidence in the light most favorable to the government.'" *Id.* (quoting *United States v. Hiland,* 909 F.2d 1114, 1131 (8th Cir.1990)). We review a district court's decision to give a willful blindness instruction under the clearly erroneous standard. *Id.*

In this case, Eugene Gruenberg has maintained from the beginning that he lacked any guilty knowledge. He pled "not guilty" to each count charged against him in the indictment. He admits that there may be circumstantial evidence indicating that he knew of the illegal conduct, *see* Eugene's Brief at 21–23, but argues that he did not deliberately avoid actual knowledge.

"[E]ven where there is evidence of actual knowledge, a willful blindness instruction is proper if there is sufficient evidence to support an inference of deliberate ignorance." *Hiland,* 909 F.2d at 1130–31. In the case of Eugene Gruenberg, there is sufficient evidence to support an inference of deliberate ignorance. For example, on the last day of fiscal year 1986, Eugene Gruenberg loaned $2.8 million to Micheal Gruenberg which was eventually used to pay an accounts receivable owed by Yamaha, ENDO's most important distributor. Yamaha accounted for approximately 60 percent of ENDO's total sales in fiscal year 1986. A reasonable inference from Eugene's failure to investigate the need to personally finance one of Yamaha's debts is that Eugene deliberately "buried his head in the sand" about the true nature of ENDO's fraudulent financial dealings.

---

2.  Eugene Gruenberg also contends that the instruction improperly permitted the jury to convict him based on a negligence standard. *See* Eugene's Reply Brief at 15. This contention is

without merit because the district court specifically informed the jury that a showing of negligence or mistake is not sufficient to support a finding of willfulness or knowledge.

Considering the reasonable inferences from all of the evidence in the record in the light most favorable to the government, we hold that there was a sufficient foundation for a willful blindness instruction. Thus, the district court did not clearly err in its decision to give the instruction. *See Long*, 977 F.2d at 1271.

### B. Specific Unanimity Instruction

Eugene Gruenberg also argues that the district court erred in failing to give a specific unanimity instruction to the jury. The district court gave an instruction that permitted the jury to find Eugene participated in a fraudulent scheme if it determined beyond a reasonable doubt that he was involved in one of the various schemes alleged in the Indictment. The instruction read:

> In the indictment, it is alleged that various schemes were employed to defraud. To show participation by a defendant in one of those schemes, the government must prove beyond a reasonable doubt that the defendant was involved in a specific scheme alleged in the indictment. It is not sufficient if the government prove [sic] that a defendant was a party to another scheme that was separate and distinct from that alleged in the indictment.

Jury Instruction, Tr., Vol. 85, at 9894. Eugene contends that without a specific unanimity instruction, his convictions may have occurred as a result of different jurors concluding that he participated in different schemes.[3]

■ "A general unanimity instruction usually protects a defendant's sixth amendment right to a unanimous verdict." *United States v. Montanye*, 962 F.2d 1332, 1341 (8th Cir.1992) (citing *United States v. Hiland*, 909 F.2d 1114, 1139 (8th Cir.1990)). A district court may have to give a specific

unanimity instruction when there is a genuine risk of jury confusion. *Id.* However, " '[t]he mere fact ... that an instruction could conceivably permit a jury to reach a non-unanimous verdict is not sufficient to require reversal when the jury has been instructed that it must reach a unanimous verdict.' " *Hiland*, 909 F.2d at 1140 (quoting *Berrisford v. Wood*, 826 F.2d 747, 754 (8th Cir.1987)). We review a district court's decision not to give a specific unanimity instruction under the clearly erroneous standard. *Hiland*, 909 F.2d at 1140; *see also Berrisford*, 826 F.2d at 754.

■ After reviewing the instructions, we hold that the district court did not err in refusing to give a specific unanimity instruction. Eugene does not allege that the district court instructed the jury that it was permitted to reach a non-unanimous verdict. To the contrary, the district court specifically instructed the jury that a verdict of guilty must be unanimous. *See* Tr., Vol. 85, at 9911. Furthermore, the indictment specifies the particular defendants, the date, and the alleged illegal conduct that constitutes each specific count charged against each defendant. As a result, we find that there was not a genuine risk for jury confusion.

### C. Rule 10b–5 Jury Instruction

■ Both Gruenbergs raise objections to the jury instructions regarding the Rule 10b–5 counts charged in Counts 21–30 of the indictment. Specifically, they contend that the district court's instruction on the "in connection with" requirement negated the need to show the element of materiality and, therefore, constructively amended the indictment. On review, we must determine if the jury instructions given, when viewed as a whole, adequately and correctly instruct the jury as to the applicable substantive law. *United States v. Cheatham*, 899

---

3. Eugene's proposed specific unanimity instruction read:

> In the indictment it is asserted that Micheal and Eugene Gruenberg employed a scheme to defraud purchasers of Endotronics stock. The government must prove beyond a reasonable doubt that Micheal and/or Eugene Gruenberg was involved in the specific

scheme alleged in the indictment. It is not sufficient if the government proves that Micheal and/or Eugene Gruenberg was a party to another scheme which was separate and distinct from that alleged in the indictment. Eugene's Proposed Jury Instruction 14, Vol. I, Eugene's Appendix, at 53.

F.2d 747, 751 (8th Cir.1990) (a defendant is not entitled to a particularly worded instruction where the instructions given, when viewed as a whole, adequately and correctly address the substance of the requested instruction). "A district court has wide discretion in formulating appropriate jury instructions." *United States v. Walker*, 817 F.2d 461, 463 (8th Cir.), *cert. denied*, 484 U.S. 863, 108 S.Ct. 181, 98 L.Ed.2d 134 (1987).

The challenged instruction reads:

> It is not necessary for the Government to prove that a defendant actually participated in any securities transaction if that defendant was engaged in fraudulent conduct that was in connection with a purchase or sale of a security. The "in connection with" aspect of this element is satisfied if you find that there was some nexus or relation between the allegedly fraudulent conduct and the sale or purchase of securities. This element requires proof of fraudulent conduct, the accomplishment of which is directly related to the trading process. Fraudulent conduct may be in connection with the purchase or sale of securities if you find that the alleged fraudulent conduct touched upon a securities transaction or was of a sort that would cause a reasonable investor to rely thereon and in connection therewith so relied to purchase or sell Endo stock.

Jury Instructions, Vol. 85, at 9889–90. In addition to the "touching upon" instruction, the district court instructed the jury that the government must prove three essential elements beyond a reasonable doubt in order to find the defendants guilty of Counts 21–30 of the indictment. The essential elements instruction reads in part:

> First, that a defendant did any one or more of the following in connection with the purchase or sale of Endo stock:
>
> (1) employed a device, scheme or artifice to defraud; or
>
> (2) made an untrue statement of a *material* fact or omitted to state a *material* fact which made what was said, under the circumstances, misleading; or

> (3) engage in an act, practice or course of business that operated, or would operate, as a fraud or deceit upon a purchaser or seller;
>
> ....

Jury Instructions, Vol. 85, at 9885–86 (emphasis added).

■ Contrary to the Gruenbergs' contention, the jury instructions correctly stated that the requirement of materiality refers only to the making of a "misrepresentation or omission." *See* 17 C.F.R. § 240.10b–5 (1992). In addition, "[s]ection 10(b) and Rule 10b–5 proscribe fraudulent conduct 'in connection with the purchase or sale of any security.'" *Harris v. Union Elec. Co.*, 787 F.2d 355, 368 (8th Cir.) (citing 15 U.S.C. § 78j (1982) and 17 C.F.R. § 240.10b–5 (1985)), *cert. denied*, 479 U.S. 823, 107 S.Ct. 94, 93 L.Ed.2d 45 (1986). "The plaintiff in a Rule 10b–5 case need not establish a direct or close relationship between the fraudulent transaction and the purchase or sale of a security...." *Alley v. Miramon*, 614 F.2d 1372, 1378 n. 11 (5th Cir.1980). Instead, the plaintiff need only show "that the fraudulent conduct 'touches' the purchase or sale of the securities." *Harris*, 787 F.2d at 368 (citing *Superintendent of Ins. v. Bankers Life & Casualty Co.*, 404 U.S. 6, 12–13, 92 S.Ct. 165, 168–69, 30 L.Ed.2d 128 (1971)).

After reviewing the jury instructions as a whole, we conclude that the jury instructions correctly defined the "in connection with" requirement of Rule 10b–5 and that the indictment was not constructively amended.

*III. Conclusion*

After reviewing the remaining issues raised by both Gruenbergs, we find that the issues lack merit. Accordingly, the judgment of the district court is affirmed.