# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-2780

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Antoinette Rose Florez, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted:  March 9, 2004

Filed:  May 27, 2004

_____

Before WOLLMAN, MORRIS SHEPPARD ARNOLD, and COLLOTON, Circuit
    Judges.

_____

WOLLMAN, Circuit Judge.

Antoinette Rose Florez was convicted by a jury of aiding and abetting money
laundering under 18 U.S.C. § 1956(a)(1)(B)(i).  She appeals, arguing that the district
court[1] erred in submitting a willful blindness instruction to the jury.  We affirm.

_____

[1]The Honorable James M. Rosenbaum, Chief Judge, United States District
Court for the District of Minnesota.

# I.

Florez's ex-husband, Tyrone Crawford, engaged in an extensive real estate fraud scheme. Florez became involved after Crawford's bank accounts were canceled and he was precluded from opening a bank account in his own name for one year. He asked Florez to open an account in her name that he could use. Crawford testified that Florez was concerned that he would do "something funny with the account." She nevertheless opened a second individual checking account at US Bank, solely in her name, on November 21, 2001. She used Crawford's address and phone number and gave him control over the check book and bank card. He used the checkbook several times, each time forging her name. Crawford enlisted Florez's help only when making large cash withdrawals, which had to be made in person.

The money laundering charge at issue involved a complex series of transactions. Florez was involved only at the end of the transactions, when she helped Crawford withdraw proceeds of the illegal transactions, equaling $100,000 in cash. Crawford falsified paperwork to make it look like a particular house had been sold and financed by a new mortgage. Crawford then sold his fictitious mortgage to InterBay Funding for $115,095.52. InterBay wired the funds to the Florez bank account on February 6, 2002. The same day the money was wired, Crawford drove to Florez's home and told her he wanted to withdraw $100,000 from the account. He and Florez went to the bank together, and Florez asked to withdraw the $100,000 in cash. The Bank told them the funds were not available at that time and said that they would have to return the following day once the funds had been ordered. The next day, before Florez and Crawford received the cash, the vault teller filled out a currency transaction report form with them. As part of that process, she asked about their occupations, to which both Crawford and Florez replied that they were rehabbers. Two tellers then took them to a room, where they counted out the $100,000 cash in 100-dollar bills. Florez placed the money in her purse, whereupon guards escorted Florez and Crawford out of the bank. Florez handed the money to Crawford, which he placed in the trunk of his car.

Later the same day, FBI agents interviewed Florez at her home. She told them that she knew about the transfer and acknowledged that she had made the large withdrawal, but she would not identify to whom she had given the money. Crawford arrived at Florez's home in his car while the agents were still there, but drove away when he saw them. Crawford testified that he called Florez and that she told him the agents were there for the money.

At Florez's trial, the district court gave the jury the following willful blindness instruction over a defense objection:

> Now, the government may prove that the defendant, Antoinette Florez, acted knowingly by proving beyond a reasonable doubt that this defendant deliberately closed her eyes to what would otherwise have been obvious to her. No one can avoid responsibility for a crime by deliberately ignoring what is obvious. A finding beyond a reasonable doubt of an intent of defendant, Antoinette Florez, to avoid knowledge or enlightenment would permit a jury to find knowledge. Stated another way, a person's knowledge of a particular fact may be shown from a deliberate or intentional ignorance or deliberate or intentional blindness to the existence of that fact. It is, of course, entirely up to you as to whether to find any deliberate ignorance or deliberate closing of the eyes and any inferences to be drawn for any such evidence, if you find it. You may not conclude that defendant, Antoinette Florez, had knowledge, however, for [sic] proof of mistake, negligence, carelessness or a belief in an inaccurate proposition.

The jury found Florez guilty of aiding and abetting the laundering of $100,000 under 18 U.S.C. § 1956(a)(1)(B)(i). She was sentenced to 18 months' imprisonment and two years of supervised release and was ordered to make restitution in the amount of $5,000.00.

**II.**

Florez argues that there was no evidentiary basis for the willful blindness instruction and that it improperly reduced the government's burden of proof. We review the district court's jury instructions for abuse of discretion and will affirm "[i]f the instructions, taken as a whole, fairly and adequately submitted the issues to the jury." United States v. Lalley, 257 F.3d 751, 755 (8th Cir. 2001). "A willful blindness instruction is appropriate when the defendant asserts a lack of guilty knowledge, but the evidence supports an inference of deliberate ignorance." United States v. Gruenberg, 989 F.2d 971, 974 (8th Cir. 1993) (citations omitted). Ignorance is deliberate if the defendant was presented with facts that put her on notice that criminal activity was particularly likely and yet she intentionally failed to investigate those facts. United States v. Barnhart, 979 F.2d 647, 652 (8th Cir. 1992). We look to whether there was sufficient evidence to justify the instruction, reviewing "the evidence and any reasonable inference from that evidence in the light most favorable to the government." United States v. Hiland, 909 F.2d 1114, 1130-31 (8th Cir. 1990).

A willful blindness instruction is not appropriate if the evidence implies that the defendant could only have had "either actual knowledge or no knowledge of the facts in question." United States v. Parker, 364 F.3d 934, 946 (8th Cir. 2004) (citation omitted). The evidence is sufficient to support the instruction, however, if a reasonable jury could find beyond a reasonable doubt that the defendant had either actual knowledge of the illegal activity or deliberately failed to inquire about it before taking action to support it. See id. (citing United States v. Kellermann, 992 F.2d 177, 179 (8th Cir. 1993)). If, in light of certain obvious facts, reasonable inferences support a finding that a defendant's failure to investigate is equivalent to "burying one's head in the sand," the jury may consider willful blindness as a basis for knowledge. See Gruenberg, 989 F.2d at 974. We have previously noted that the legislative history of 18 U.S.C. § 1956, the statute at issue here, supports the conclusion that Congress intended the knowledge requirements to include instances of willful blindness. Lalley, 257 F.3d at 755. In addition, a jury cannot be led to

-4-

convict the defendant improperly on a negligence standard where, as here, the instruction states that the jury must not conclude that the defendant had knowledge of criminal activity if it finds that she is simply careless or negligent. See Parker, 364 F.3d at 947 n.3.

The government had to prove that Florez knew that the financial transaction involved "the proceeds of some form of unlawful activity." We conclude that the evidence taken as a whole was sufficient to support an inference that even if Florez did not have actual knowledge that Crawford was using the bank account for illegal activities, it was only because she chose not to investigate and effectively buried her head in the sand. This is not a situation in which the jury could reasonably conclude from the evidence only that Florez either had actual knowledge or no knowledge. See Parker, 364 F.3d at 946. Crawford's request that Florez withdraw $100,000 in cash after a wire transfer that occurred the same day and Florez's concern over Crawford's prior use of bank accounts provided sufficient evidence to support the instruction.

The judgment is affirmed.

_____