# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-1320
_____

United States of America

*Plaintiff - Appellee*

v.

Rodney Foster

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: November 20, 2013
Filed: January 30, 2014

_____

Before BENTON, BEAM, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

A jury convicted Rodney Foster of conspiracy to commit identity theft and wire fraud for his involvement in a mortgage-fraud scheme that utilized a straw-buyer's identity. Foster appeals his conviction, arguing that the Government failed to establish that the conspirators knew the straw-buyer's identity belonged to a real

person, as required by the identity-theft statute. We hold that the Government satisfied its burden in this respect and affirm the district court.[1]

## I.

Foster and his wife owned a home in Lee's Summit, Missouri. They listed the house for sale but had difficulty finding a buyer. After their initial attempts to sell the house were unsuccessful, Foster approached his brother-in-law Maurice Ragland for help in selling the house.

Ragland and some of his associates had formed a mortgage appraisal and brokerage service called TERM. TERM performed both legal and illegal services. TERM's illegal activities often involved a straw-buyer serving as a fraudulent borrower-buyer on a property listed by a TERM associate. TERM frequently utilized actual identities when it arranged these fraudulent transactions. One such identity was that of Christopher Taylor, which was used by the TERM conspirators several times. Steven Edenfield, one of the conspirators, testified that he had posed as Christopher Taylor for the photograph on a fake driver's license in Taylor's name.

Ragland informed Foster that he could sell Foster's house but that Foster could not tell his wife (Ragland's sister) the details of how the home was sold. Foster agreed to Ragland's terms, and Ragland informed Foster of the details of the plan, including the use of a straw-buyer. Foster acted as the mortgage broker on the sale. A fraudulent loan application was completed in Christopher Taylor's name, using the fake driver's license that bore Edenfield's photograph. The conspirators artificially elevated the appraised value of the property so Foster's mortgage on the property could be repaid and excess funds would remain available for the conspirators to divide among themselves. The sale was finalized in 2005.

---

[1]The Honorable Brian C. Wimes, United States District Judge for the Western District of Missouri.

All worked according to plan until Foster and his wife, Ragland's sister, divorced in 2009. After the divorce, Foster's wife returned to Lee's Summit to visit her former house. Because her brother and his associates had been convicted for mortgage-fraud activities, she became suspicious about the sale of the home after seeing that the house was vacant. Soon after, Foster's wife wrote a letter to the FDIC stating that she feared the home may have been fraudulently sold. The FDIC began its investigation into the sale of the house and Foster's potential involvement. The victim, Christopher Taylor, eventually was named as a defendant in a civil lawsuit for unpaid homeowner's association dues arising from his apparent ownership of the Lee's Summit home.

Foster was indicted on one count of conspiracy, under 18 U.S.C. § 371, to commit identity theft and wire fraud. See 18 U.S.C. § 1028(a)(7) (identity theft); 18 U.S.C. § 1343 (wire fraud).[2] After the defense presented its case, Foster moved for a judgment of acquittal, which the district court denied. The jury found Foster guilty of conspiracy, and Foster brings this appeal.

## II.

We review a district court's denial of a motion for judgment of acquittal *de novo*. United States v. Clark, 668 F.3d 568, 573 (8th Cir. 2012). Just like our review in a sufficiency-of-the-evidence challenge, "'[w]e view the evidence in the light most favorable to the guilty verdict, granting all reasonable inferences that are supported by that evidence.'" Id. (quoting United States v. Milk, 447 F.3d 593, 598 (8th Cir. 2006)). We must affirm the verdict if a reasonable juror could have found the

---

[2]The identity-theft provision in contest, section 1028(a)(7), forbids the use of another person's identity in connection with "any unlawful activity" that violates federal law or constitutes a felony under state or local law. 18 U.S.C. § 1028(a)(7). The underlying federal offense Foster is alleged to have committed is a violation of the wire fraud statute. See 18 U.S.C. § 1343. Thus, Foster was convicted of conspiring to use the identity of another person to commit wire fraud.

defendant guilty of the crime charged beyond a reasonable doubt. Id. "Circumstantial evidence alone can prove the elements of conspiracy." United States v. Dotson, 570 F.3d 1067, 1068 (8th Cir. 2009).

To support Foster's conspiracy conviction, the Government was required to show: (1) an agreement between Foster and one or more persons to use the identity of another person to commit wire fraud; (2) Foster knew of the agreement; and (3) Foster intentionally joined the agreement. See United States v. Cole, 721 F.3d 1016, 1021 (8th Cir. 2013). Foster does not directly address any of the elements of conspiracy in this appeal. Instead, both Foster and the Government frame their arguments in terms of whether Foster committed the offense of identity theft, one of the objectives of the conspiracy for which Foster was charged. Foster contends that: (1) the Government failed to establish that the conspirators knew Christopher Taylor's identity belonged to an actual person, and (2) the Government failed to show that the "means of identification" the conspirators used would be sufficient to "identify a specific individual."

Foster's arguments concerning the underlying offense of identity theft are relevant to Foster's conspiracy conviction insofar as "a conspiracy to commit [an] offense is nothing more than an agreement to engage in the prohibited conduct." See United States v. Bertling, 611 F.3d 477, 480-81 (8th Cir. 2010) (quoting United States v. Feola, 420 U.S. 671, 687 (1975)); see also United States v. Hyles, 521 F.3d 946, 955-56 (8th Cir. 2008) (analyzing whether the defendant knew the individual to which she was delivering a gun was a felon when the defendant was charged with conspiracy to deliver a firearm to a felon). The identity-theft provision Foster conspired to violate, found in section 1028(a)(7), provides as follows:

> [Whoever] knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person with the intent to commit, or to aid or abet, or in connection with, any unlawful activity

that constitutes a violation of Federal law, or that constitutes a felony under any applicable State or local law

. . .

shall be punished as provided in subsection (b) of this section.

18 U.S.C. § 1028(a)(7).  The Government concedes that section 1028(a)(7) requires it to prove that the defendant knew that the means of identification at issue belonged to an actual person.  See Flores-Figueroa v. United States, 556 U.S. 646, 657 (2009).[3] In this case, therefore, the Government was required to show that Foster "knew of and participated in an agreement the 'essential object' of which was" to use a means of identification of an actual person to commit wire fraud.  See United States v. Calhoun, 721 F.3d 596, 601-02 (8th Cir. 2013); see also id. at 601 ("'Conspiracy to commit a particular substantive offense cannot exist without at least the degree of criminal intent necessary for the substantive offense itself.'" (emphasis omitted) (quoting Ingram v. United States, 360 U.S. 672, 678 (1959))).

Viewing this appeal in light of the crime for which Foster was charged—conspiracy to commit identity theft and wire fraud—we reject Foster's two

---

[3]Although Flores-Figueroa construed section 1028A(a)(1), the text of section 1028(a)(7) is identical.  Compare 18 U.S.C. § 1028(a)(7) ("Whoever . . . knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person . . . ."), with 18 U.S.C. § 1028A(a)(1) ("Whoever . . . knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person . . . .").  Thus, we interpret section 1028(a)(7) to require the Government to prove that the defendant knew the identity used belonged to an actual person.  See United States v. Berry, 369 F. App'x 500, 501-02 (4th Cir. 2010); see also United States v. Bruguier, 735 F.3d 754, 760 (8th Cir. 2013) (en banc) (reasoning that "'similarity of language' in two different statutes was 'strong indication that the two statutes should be interpreted' the same" (quoting Northcross v. Bd. of Educ., 412 U.S. 427, 428 (1973) (per curiam))).

arguments and hold that the district court did not err in denying Foster's motion for judgment of acquittal.

First, the Government presented sufficient proof to show that the conspirators agreed to use the identity of an actual person. Maurice Ragland testified that he informed Foster of all of the details of his past mortgage-fraud schemes, including his frequent use of real identities. Ragland's testimony provided strong evidence that Foster was informed that the victim would be real:

> Government: So when you told [Foster], did you tell [Foster] that there would be a straw buyer?
> Ragland: Yes.
> Government: And it was going to be identity theft?
> Ragland: Yes.

Trial Tr. at 190. Moreover, Christopher Taylor's specific identity had been used on multiple occasions. Steven Edenfield, the man who posed as Taylor for the driver's license photograph, testified to the following when asked about the conspirators' use of the Christopher Taylor driver's license:

> Government: The picture on that driver's license is you?
> Edenfield: Yes
> Government: And do you recognize the name on the license?
> Edenfield: Yes
> Government: Do you know Christopher Taylor, the real Christopher Taylor?
> Edenfield: No
> . . .

Government: All right. Did it look to you like it was a pretty good counterfeit of a real driver's license?

Edenfield: Very.

Government: Were you able to successfully use it on multiple occasions?

Edenfield: Yes.

Government: And was that to purchase houses?

Edenfield: Yes.

. . .

Government: Do you recall that one of the houses that you used this driver's license to buy was a house on Huntbrook Terrace in Lee's Summit, Missouri?

Edenfield: Yes, sir.

. . .

Government: Did you actually go to a closing?

Edenfield: I did.

Government: Portraying yourself as Christopher Taylor?

Edenfield: Yes.

Trial Tr. at 220-22. Christopher Taylor verified Edenfield's testimony, stating that Taylor's identity had been used to obtain several fraudulent home loans.

This evidence, and the reasonable inferences that arise from it, was sufficient to permit a reasonable jury to find that Foster and his conspirators agreed to use the identity of a real person, specifically, Christopher Taylor. The conspirators' repeated subjection of Christopher Taylor's identity to a lender's scrutiny provides strong circumstantial evidence that the conspirators knew the identity was real. See United States v. Doe, 661 F.3d 550, 562-63 (11th Cir. 2011) ("[Eleventh Circuit caselaw] stand[s] for the unremarkable proposition that a defendant's repeated and successful testing of the authenticity of a victim's identifying information prior to the crime at

issue is powerful circumstantial evidence that the defendant knew the identifying information belonged to a real person as opposed to a fictitious one."). A reasonable juror could also infer that the defendants, as mortgage brokers, knew that their scheme would be more successful if real identities were used because those real identities would be connected to actual credit scores. Cf. United States v. Clark, 668 F.3d 568, 574 (8th Cir. 2012) ("A reasonable juror could infer that [the defendant], being a bank account holder and prior perpetrator of identity theft, knew that banks open accounts for, and give credit to only real people."). We also note that the conspirators need not have known Christopher Taylor personally; they need only have known that an actual Christopher Taylor existed. See United States v. Retana, 641 F.3d 272, 275 (8th Cir. 2011). In sum, Foster's first argument is unavailing.

Second, a reasonable juror could conclude that the "means of identification" the conspirators agreed to use would be sufficient to "identify a specific individual," as section 1028(d)(7) requires. Section 1028(a)(7) prohibits the use of "a means of identification of another person" to accomplish a crime. The phrase "means of identification" is defined as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual." The section then lists several examples of the type of information that may help to specify an individual, including, but not limited to, a social security number, date of birth, driver's license number, or taxpayer identification number. Section 1028(a)(7), therefore, incorporating the definition of "means of identification" from section 1028(d)(7), prohibits the knowing use of another person's personal information when the information used is sufficient to identify a specific person. See United States v. Mitchell, 518 F.3d 230, 232, 234-35 (4th Cir. 2008) (holding that the Government failed to present sufficient information that could connect the name on the driver's license to an actual, existing person when driver's license was a muddled mix of real and fictional identifiers that, taken together, could not be used to pinpoint a specific person).

At trial, the Government presented several of the documents the conspirators used to carry out their scheme, including the forged Christopher Taylor driver's license, the HUD settlement statement, and the residential-loan application. Significantly, the conspirators' use of the information contained on these documents provided enough specifying detail to permit the homeowner's association and lender on the Lee's Summit house to locate Christopher Taylor and name him as a defendant in a lawsuit to collect past-due association dues. Thus, a reasonable juror could draw the inference that the information the conspirators agreed to use was sufficient to identify a specific individual (i.e., Christopher Taylor) because two creditors actually were able to do so. See United States v. Castellanos-Loya, 503 F. App'x 240, 241 (4th Cir. 2013) (unpublished per curiam); see also United States v. Alexander, 725 F.3d 1117, 1117-18, 1121 (9th Cir. 2013) ("To the extent that a forged check contains a victim's true name, bank account number, and routing number—personal data that easily may be used to identify a specific individual—such a check plainly and comfortably fits within the broad language of § 1028(d)(7) . . . ." (alteration omitted) (internal quotation marks omitted)).

"While the government's proof was less than overwhelming, '[t]he jury's verdict must be upheld if there is an interpretation of the evidence that would allow a reasonable-minded jury to conclude guilt beyond a reasonable doubt.'" United States v. Ford, 717 F.3d 612, 619 (8th Cir. 2013) (alteration in original) (quoting United States v. Erdman, 953 F.2d 387, 389 (8th Cir. 1992)). Given this standard of review, the evidence submitted by the Government was sufficient to convict Foster of conspiracy to commit identity theft and wire fraud.

III.

Accordingly, we affirm Foster's conviction.

_____