In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 13-2166

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ROBERTO MACIAS,

*Defendant-Appellant.*

---

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 09 CR 546–7 — **Elaine E. Bucklo**, *Judge.*

---

ARGUED MAY 19, 2015 — DECIDED MAY 26, 2015

---

Before POSNER, EASTERBROOK, and MANION, *Circuit Judges*.

POSNER, *Circuit Judge*. The defendant was convicted of conspiring to distribute at least five kilograms of cocaine, in violation of 21 U.S.C. § 846 and 18 U.S.C. § 2, and of conducting an unlicensed money-transmitting business in violation of 18 U.S.C. § 1960. He was sentenced to 300 months (25 years) for the conspiracy offense and 60 months (5 years), to run concurrently with the conspiracy sentence, for the mon-

ey-transmitting offense. His appeal is limited to the first conviction, and complains primarily (and is his only complaint with sufficient merit to warrant discussion) about the judge's giving a "deliberate indifference" instruction to the jury (colloquially, an "ostrich" instruction). The instruction the judge gave (which is almost word for word Instruction 4.10 in *Pattern Criminal Jury Instructions of the Seventh Circuit*, p. 50 (2012), which superseded an earlier version criticized in *United States v. Ramsey*, 785 F.2d 184, 188–91 (7th Cir. 1986); cf. *United States v. Josefik*, 753 F.2d 585, 589 (7th Cir. 1985)) states: "You may find that the defendant acted knowingly if you find beyond a reasonable doubt that he had a strong suspicion that the money transported in this case was the proceeds of narcotics trafficking and that he *deliberately avoided the truth*. You may not find that the defendant acted knowingly if he was merely mistaken or careless in not discovering the truth, or *if he failed to make an effort to discover the truth*." The first clause that we've italicized is the one that the defendant particularly challenges, and the second is the one that he claims exonerates him of *deliberate* indifference.

Macias had once been a member of a conspiracy to smuggle illegal immigrants across the United States-Mexico border. Among his specific duties had been transporting the immigrants to this country. After being convicted for that offense he had left the smuggling business, moved back to Mexico, and created a bus company to transport legal Mexican immigrants to the United States. In 2007 he was approached by a member of the La Familia Michoacana drug cartel (it's unclear whether Macias knew the person was representing the cartel) and was asked to assist, for generous pay, in moving money from the United States to Mexico. He testified that he didn't know that the money he was to move

consisted of proceeds from the sale of illegal drugs; he said he assumed and indeed was told by the person who recruited him into the conspiracy that the money came from smuggling Mexicans into the United States. He never asked what was being smuggled, and so (if his testimony is believed) never was disabused of his assumption that it was people, not drugs, that were being smuggled.

If as he claims he was an *unwitting* member of a drug conspiracy, he was not guilty of membership in the conspiracy. For suppose a stranger asks you to help him carry a box to a house across the street, and you oblige. Unbeknownst to you the house is a stash house and the box contains cocaine. You are not guilty of conspiring to distribute illegal drugs, even though you have assisted in that distribution. A total dupe is not a conspirator.

A federal agent who specializes in investigating the smuggling of immigrants into the United States testified as an expert witness that the sums of money that Macias handled for the drug conspiracy greatly exceeded the sums involved in human smuggling. The jury could have inferred from this that Macias knew he was working for drug smugglers, as no one other than Macias has suggested that any other type of smuggling from Mexico is equally lucrative. But obviously the government lacked confidence that it could "sell" such an inference to the jury. Despite his past involvement in human smuggling Macias may not have known what the federal agent knew about the financial limits of human smuggling. And he may have thought that since his experience in smuggling was limited to human smuggling, this was the only kind of smuggling he would be hired to assist in.

So the government pressed for the ostrich instruction. The two clauses in it that we italicized earlier are in tension with one another. The jury was told both that it could convict Macias of participation (which would, as we said, have to be knowing in order to be actionable) in the drug conspiracy if he deliberately avoided the truth, and that it could not convict him if he failed to make an effort to discover the truth. The second clause makes clear that he had no duty of inquiry. But what does the first clause mean? One possibility is that it means taking some active measure to avoid confirming one's suspicions. A person who suspected that he had rented his house to a drug gang might take a wide detour to avoid driving by the house lest he notice someone carrying what appeared to be illegal drugs out of or into the house. Nothing like that is claimed to have happened in this case.

The other possible meaning of the first clause—the meaning pressed by the government—is what the government calls "psychological avoidance" (as distinct from physical avoidance, as in the example of changing one's route of travel to avoid seeing confirmation of one's suspicions). You suspect that your house is being used as a stash house, or that you're assisting in the smuggling of drugs into the United States, but you shut down your mind to block yourself from receiving confirmation of your suspicion. It's what's called being "in denial," or alternatively "refusing to face the facts." But its application to this case is obscure. Either Macias inferred from the difference between the amount of money he was handling for the new cartel and the amount he had handled in his human-smuggling operation that he was now working for a drug cartel, or he thought he was working for a much larger human-smuggling gang than he

had worked for previously. In the first case he was guilty, regardless of the ostrich instruction, and in the second case he was innocent because the instruction denies that there is any duty "to make an effort to discover the truth." There is no evidence that suspecting he might be working for a drug cartel Macias took active steps to avoid having his suspicions confirmed. Suppose one of the cartel members had said to him "let me tell you what we smuggle," and he had replied: "I don't want to know." That would be ostrich behavior (mythical ostrich behavior—ostriches do *not* bury their heads in the sand when frightened; if they did, they would asphyxiate themselves). It seems more likely that the cartel would not have told him what it was smuggling. For he had no need to know—and sophisticated gang members, like naval officers, know that "loose lips sink ships." Remember that he testified that the person who had recruited him into the conspiracy had told him that it was illegal immigrants who were being smuggled into the country; if this conversation in fact took place, Macias might have believed that he was assisting in immigrant smuggling rather than drug smuggling.

An ostrich instruction should not be given unless there is evidence that the defendant engaged in behavior that could reasonably be interpreted as having been intended to shield him from confirmation of his suspicion that he was involved in criminal activity. As the Supreme Court put it in *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2070 (2011), the defendant must not only "believe that there is a high probability that a fact exists" but also "must take deliberate *actions* to avoid learning of that fact" (emphasis added). In *United States v. Salinas*, 763 F.3d 869, 880–81 (7th Cir. 2014), we noted that although *Global-Tech* was a civil case, several

courts of appeal have deemed its definition of willful blindness applicable to criminal cases. It is quite similar to our analysis of ostrich instructing in *United States v. Giovannetti*, 919 F.2d 1223, 1228 (7th Cir. 1990):

> the ostrich instruction is designed for cases in which there is evidence that the defendant, knowing or strongly suspecting that he is involved in shady dealings, takes steps to make sure that he does not acquire full or exact knowledge of the nature and extent of those dealings. … A good example of a case in which the ostrich instruction was properly given is *United States v. Diaz*, 864 F.2d 544, 550 (7th Cir. 1988). The defendant, a drug trafficker, sought "to insulate himself from the actual drug transaction so that he could deny knowledge of it," which he did sometimes by absenting himself from the scene of the actual delivery and sometimes by pretending to be fussing under the hood of his car. The government points out that the rented house [where the illegal activity in *Giovannetti* was taking place] … was a short way down a side street from the thoroughfare on which Janis [Giovannetti's codefendant] commuted to work daily. It would have been easy for him to drive by the house from time to time to see what was doing, and if he had done so he might have discovered its use as a wireroom. He did not do so. But this is not the active avoidance with which the ostrich doctrine is concerned. It would be if the house had been *on* the thoroughfare, and Janis, fearful of what he would see if he drove past it, altered his commuting route to avoid it. Janis failed to display curiosity, but he did nothing to prevent the truth from being communicated to him. He did not *act* to avoid learning the truth.

And so in this case as well, as far as the evidence shows.

The government states in its brief that if the ostrich instruction should not have been given, giving it nevertheless was a harmless error. Just the other day we had a case in which we held that the giving of a confusing jury instruction was a harmless error. *United States v. Dobek*, 2015 WL 2374768, at *3 (7th Cir. May 19, 2015). But this was because the evidence of the defendant's guilt was overwhelming. No reasonable jury would have acquitted him even if the confusing instruction had not been given; a retrial would therefore have been a waste of time. The evidence against Macias was sufficient but not overwhelming. He may have been unaware that he was working for a drug cartel. Given the ostrich instruction, the jury conceivably could have convicted Macias because he wasn't curious enough to discover the source of the illegal funds. Furthermore, the government's *entire* discussion of harmless error consists of the following clause in its brief: "given the substantial evidence of Macias' actual knowledge, any instructional error clearly was harmless." That is not argument, but pure, unsubstantiated conclusion, entitled to zero weight.

The instruction in the *Dobek* case was necessary to define for the jury "willfully," an essential element of the crime that the defendant was charged with having committed; it just was poorly worded. The instruction challenged in this case, the ostrich instruction, was gratuitous. It had no basis in evidence suggestive of an effort by the defendant to avoid confirming his suspicions. We don't know whether he suspected he was working for a drug cartel or if he did that he took measures to avoid confirming those suspicions, like telling his boss, "whatever you do, don't tell me what you're smuggling because if it's illegal drugs I will if caught be subject to a very long prison sentence."

The government further muddies the waters by offering, as an equivalent to "deliberate indifference," "psychological efforts" consisting of "cutting off … one's normal curiosity by an effort of will." That sounds like judge playing psychologist; no matter, for there indeed are circumstances in which a failure to ask questions is unnatural—a ducking of responsibility, a violation of duty, and perhaps therefore the equivalent of taking evasive action to avoid confirming one's suspicions. See *United States v. Black*, 530 F.3d 596, 604 (7th Cir. 2008), vacated on other grounds under the name *Black v. United States*, 561 U.S 465 (2010). *United States v. Craig*, 178 F.3d 891, 896–99 (7th Cir. 1999), one of the cases in which the court used the "cutting off" phrase, was such a case. (It is a dispensable phrase, however, not only because of its air of folk psychology but also because American law is complicated enough without adding epicycles to every doctrinal formula. The author of this opinion pleads guilty to having used the phrase in *United States v. Giovannetti*, *supra*, 919 F.2d at 1229.)

There is no evidence that the defendant in the present case was remiss in failing to ask what was being smuggled. His responsibilities to the drug cartel, which had only to do with facilitating the transmission of money from the United States to Mexico, did not require him to know how the money had been obtained. Having no need or duty to know, he was not acting unnaturally in failing to inquire.

A major puzzle is the government's failure to charge the defendant with money laundering—as to which the government's case would have been a slam dunk and the defendant subject to a 20-year maximum sentence, 18 U.S.C. § 1956(a). That would be a severe punishment although less

severe than the 25-year sentence that he received for his alleged knowing participation in the drug conspiracy.

The conviction and sentence for participating in the conspiracy are reversed and the case remanded for a new trial on that charge. The conviction for conducting an unlicensed money-transmitting business, not having been appealed, stands. At oral argument, however, the defendant's lawyer pointed out that the guidelines range for that offense was higher than it would have been had his client not also been convicted of participating in a drug conspiracy. We therefore order the money-transmitting sentence vacated pending any further proceedings in the district court.