# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-2188
_____

United States of America

*Plaintiff - Appellee*

v.

Randal Kent Hansen

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of South Dakota - Sioux Falls

_____

Submitted: February 12, 2015
Filed: June 30, 2015

_____

Before GRUENDER, SHEPHERD, and KELLY, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

A jury convicted Randal Kent Hansen of mail fraud, wire fraud, and conspiracy to commit mail fraud and wire fraud, as a result of actions Hansen took while operating a hedge fund that cost its investors millions of dollars when it collapsed in 2011. The district court[1] sentenced Hansen to 108 months imprisonment and ordered

_____

[1]The Honorable Karen E. Schreier, United States District Judge for the District of South Dakota.

him to pay over $17 million in restitution. Hansen appeals his conviction, challenging the district court's (1) denial of his motion for judgment of acquittal, (2) giving of a willful blindness instruction, and (3) instruction on conspiracy. We affirm.

## I. Background

In reviewing the denial of Hansen's motion for judgment of acquittal and the giving of a willful blindness instruction, we view the evidence and all reasonable inferences supported by that evidence in the light most favorable to the government. See United States v. Foster, 740 F.3d 1202, 1205 (8th Cir.) (motion for judgment of acquittal), cert. denied, 134 S. Ct. 2714 (2014); United States v. Florez, 368 F.3d 1042, 1044 (8th Cir. 2004) (willful blindness instruction). Randal Kent Hansen is a farmer from South Dakota who gained investment experience by investing his own money and by serving for several years as a trust officer at a bank. At some point during the 1990s, Hansen met a stock broker named Anthony Johnson and the two developed a rapport. In 2003, Johnson offered Hansen the opportunity to invest in Hudson Capital Partners (the "Hudson Fund"), a hedge fund Johnson ran with Ward Onsa and Vincent Puma. Hansen invested in the Hudson Fund and then continued investing in other funds with Johnson, Onsa, and Puma. Johnson, Onsa, and Puma eventually proposed creating a new fund with Hansen as their co-partner. Hansen agreed.

After several years of this arrangement, Hansen and Johnson decided to create yet another hedge fund. In 2007, they formed a limited partnership named RAHFCO Funds, LP, short for Randy and Anthony's Hedge Fund Company. Hansen served as RAHFCO's general partner. As the general partner, he retained ultimate control over all of RAHFCO's investment activities. Once RAHFCO became operational, however, Hansen delegated responsibility for executing RAHFCO's trades to the

Hudson Fund, RAHFCO's sub-advisor.[2] Thus while Hansen retained control over RAHFCO's investing, in practice, Onsa and Puma, through the Hudson Fund, executed RAHFCO's trades.

In his role as general partner, Hansen made numerous misrepresentations about RAHFCO to investors. Hansen worked with Sadis & Goldberg, a financial services law firm, to create a private placement memorandum ("PPM") to help solicit investments. The PPM described RAHFCO as having a conservative investing strategy. It stated RAHFCO generally would be able to satisfy withdrawal requests. And it assured investors RAHFCO would receive regular audits. All of these representations proved untrue.

Hansen made other false statements directly to investors. For example, Hansen elaborated on the fund's investing strategy, explaining it would place 95% of investors' money in low-risk treasuries and only 5% in higher-risk options. He reiterated that the fund would honor withdrawal requests. And at one point he assured an investor that RAHFCO was covered by the Securities Investor Protection Corporation ("SIPC"), which he explained was like the Federal Deposit Insurance Company but for securities. None of these statements was true.

Throughout RAHFCO's existence, moreover, Hansen sent investors quarterly earnings statements, which he had prepared, that falsely inflated the fund's performance. The statements showed the fund performing well even as it lost all its money. Hansen testified he was unaware the quarterly earnings statements were false because he relied on Onsa and Johnson to provide him the numbers and never confirmed the numbers himself. The quarterly earnings statements also falsely stated they were "Presented by SFG Accounting." While Hansen hired SFG Accounting to

---

[2]Testimony at trial suggested it is common for general partners to solicit investors and then to rely on their sub-advisors to execute their funds' trades.

do some work for RAHFCO, it did not prepare the quarterly earnings statements and had no knowledge Hansen used its name.

Hansen additionally assured investors, as the PPM had done, that RAHFCO would be audited regularly. However, no audits took place. Hansen hired the accounting firm Spicer Jeffries to conduct an audit in 2007, but Spicer Jeffries ceased its audit after Hansen refused to authorize Spicer Jeffries to obtain a brokerage statement confirming that RAHFCO had actually made the investments it reported it had. When Sadis & Goldberg learned that Spicer Jeffries had discontinued its audit, the law firm withdrew from its representation of RAHFCO. Hansen never informed investors that Spicer Jeffries ceased its audit or that Sadis & Goldberg withdrew its representation. Nor did he attempt to find another auditor.

Hansen testified that he became concerned about RAHFCO's lack of transparency after Sadis & Goldberg withdrew as counsel. He visited Onsa, who had been executing RAHFCO's trades, to ease his concerns. Although Onsa showed Hansen a trading account that contained $25 million, Onsa never confirmed any of the fund's particular investments for Hansen. Hansen did not press Onsa for more information.

Another area of concern for RAHFCO was that Johnson was charged in 2007 with securities fraud in relation to another investment company. Johnson spoke with Hansen the day after the arrest and informed Hansen he had been arrested for securities fraud. Hansen did not inform investors of Johnson's charges. Similarly, Onsa was sued civilly for fraudulent securities trading in 2009. Although Hansen knew of this suit, he did not inquire further and did not notify investors of the issue.

RAHFCO investors began to withdraw their money from the fund in 2008 as the economy declined. Although the fund honored the requests at first, it started experiencing liquidity problems in early 2009. These problems escalated later in 2009 when a group of investors learned about Onsa's legal troubles. Hansen testified

that RAHFCO's liquidity problems signaled to him that the fund had deviated from its purported investing strategy.

By 2010, RAHFCO was having great difficulty satisfying its withdrawal requests. Around that time, Hansen began depositing money into RAHFCO's checking account. The amounts of Hansen's deposits corresponded with the amounts RAHFCO was paying investors to satisfy withdrawal requests. In one instance, for example, RAHFCO wrote an investor a check for $129,000 when the fund did not have enough money in its checking account to cover that amount. A few days later, however, Hansen deposited $140,000 from his personal account into RAHFCO's checking account. Hansen claimed his deposits were legitimate investments in RAHFCO and denied he deposited money to pay off investors. Yet, on one occasion, Hansen paid $300,000 from his personal account directly to an investor who wished to withdraw from the fund. Further, in 2010, Johnson convinced a professional basketball player to invest $1.7 million in RAHFCO. Instead of investing the player's money, however, RAHFCO used the money to satisfy other investors' withdrawal requests. Hansen claimed he had no knowledge of this diversion.

By May 2011, RAHFCO had collapsed and Hansen was forced to inform investors that the fund had lost all their money and "that for some time, the earnings figures in our statements have been inaccurate." That statement was true.

A grand jury indicted Hansen on charges of mail fraud, wire fraud, and conspiracy to commit mail fraud and wire fraud, in violation of 18 U.S.C. §§ 1341, 1343, and 1349. The case proceeded to a trial, where Hansen argued he was innocent of fraud because he did not know his misstatements were false when he made them. He claimed he was unaware of RAHFCO's fraud and that he had been duped by Johnson, Onsa, and Puma, just like every other investor. The jury found Hansen guilty on all counts and the district court sentenced him to 108 months imprisonment with 3 years supervised release and ordered him to pay over $17 million restitution to 75 victims. Hansen appeals his conviction.

-5-

## II. Discussion

### A. Motion for Judgment of Acquittal

We first address Hansen's argument that the district court erred in denying his motion for judgment of acquittal. We review this denial de novo, "'view[ing] the evidence in the light most favorable to the guilty verdict, [and] granting all reasonable inferences that are supported by that evidence.'" United States v. Foster, 740 F.3d 1202, 1205 (8th Cir.) (quoting United States v. Clark, 668 F.3d 568, 573 (8th Cir. 2012)), cert. denied, 134 S. Ct. 2714 (2014). "We must affirm the verdict if a reasonable juror could have found the defendant guilty of the crime charged beyond a reasonable doubt." Id.

Hansen argues he is entitled to a judgment of acquittal because the government failed to show he had an intent to defraud or even any knowledge of RAHFCO's fraud. Each of the charges Hansen faced at trial—mail fraud, wire fraud, and conspiracy to commit mail fraud or wire fraud—required the government to prove that Hansen intended to commit fraud. See United States v. Parker, 364 F.3d 934, 941 (8th Cir. 2004) (mail fraud); United States v. McKanry, 628 F.3d 1010, 1017 (8th Cir. 2011) (wire fraud); Foster, 740 F.3d at 1205 (conspiracy). "Absent an outright admission of intent to defraud, the requisite intent can be shown by circumstantial evidence." United States v. Ervasti, 201 F.3d 1029, 1037 (8th Cir. 2000); see also United States v. Kelley, 152 F.3d 881, 886 (8th Cir. 1998) ("'[A] motion for a judgment of acquittal should be denied when there is substantial evidence justifying an inference of guilt irrespective of any countervailing testimony that may be introduced.'" (alteration in original) (quoting United States v. Cunningham, 83 F.3d 218, 222 (8th Cir. 1996))). "Provided the victims suffered some tangible loss—as they did here—'[t]he scheme itself often serves as evidence of a defendant's intent to defraud.'" Ervasti, 201 F.3d at 1037 (alteration in original) (quoting United States v. Whitehead, 176 F.3d 1030, 1038 (8th Cir. 1999)).

Here, the evidence was sufficient to permit a reasonable juror to find that Hansen possessed an intent to defraud. Over the course of several years, RAHFCO defrauded many investors out of tens of millions of dollars. As RAHFCO's general partner, Hansen played a prominent role in these actions and possessed significant control over the fund's operations. Hansen made many misrepresentations about RAHFCO to investors. He worked with Sadis & Goldberg to prepare the PPM, which misrepresented that RAHFCO would pursue a conservative investing strategy, that the fund would honor withdrawal requests, and that it would be audited regularly. Hansen reiterated many of these false statements directly to investors, and additionally told an investor RAHFCO was SIPC insured when it was not. Hansen also prepared and sent out quarterly earnings statements that contained false numbers and falsely represented that the statements were provided by an accounting firm. Hansen failed to inform investors that Spicer Jeffries discontinued its audit, that Sadis & Goldberg withdrew from its representation, and that both Johnson and Onsa faced allegations of securities fraud. Moreover, a reasonable juror could have found an intent to defraud based on the payments Hansen made into the fund starting in 2010 that corresponded with the fund's payments to investors—and in one case involved his payment directly to an investor—which indicated that RAHFCO had become a Ponzi scheme.

Although Hansen disputes this evidence, claiming that he did not know about RAHFCO's fraud and that he relied on Johnson's, Onsa's, and Puma's assurances that everything was aboveboard, in light of the evidence presented against him, a reasonable juror could have disbelieved him and found an intent to defraud. See id. ("The jury was not obligated either to believe the [defendants'] claims that they never intended to defraud anyone or to accept the [defendants'] interpretation of the evidence.").

Further, even if Hansen lacked actual knowledge of the fraud, a reasonable juror could have found he was willfully blind to the truth. See United States v. Chavez-Alvarez, 594 F.3d 1062, 1067 (8th Cir. 2010) ("A defendant's willful

-7-

blindness may serve as the basis for knowledge if, 'in light of certain obvious facts, reasonable inferences support a finding that a defendant's failure to investigate is equivalent to burying one's head in the sand.'" (quoting United States v. Florez, 368 F.3d 1042, 1044 (8th Cir. 2004))).

The Supreme Court has stated the two requirements of willful blindness are "(1) the defendant must subjectively believe that there is a high probability that a fact exists and (2) the defendant must take deliberate actions to avoid learning of that fact." Global-Tech Applicances, Inc. v. SEB S.A., 131 S. Ct. 2060, 2070 (2011); see United States v. Sigillito, 759 F.3d 913, 939 (8th Cir. 2014) (applying Global-Tech in a wire fraud and mail fraud case). "[T]hese requirements give willful blindness an appropriately limited scope that surpasses recklessness and negligence." Global-Tech, 131 S. Ct. at 2070.

The Supreme Court's definition of willful blindness accords with our holding that "[t]he concept of willful blindness is a limited exception to the requirement of actual knowledge, and the jury may find willful blindness only if the defendant was aware of facts that put him on notice that criminal activity was probably afoot and deliberately failed to make further inquiries, intending to remain ignorant." Chavez-Alvarez, 594 F.3d at 1067.

Here, the evidence was sufficient for the government to prove that if Hansen had no actual knowledge of his misrepresentations, then this was only because he chose to bury his head in the sand. First, there was sufficient evidence to allow a reasonable juror to find that Hansen was aware of facts that put him on notice that criminal activity was probably afoot. This evidence included that Spicer Jeffries discontinued its audit because it could not confirm RAHFCO's investment holdings; that Sadis & Goldberg withdrew its representation when Spicer Jeffries ceased its audit; that Hansen admitted he became concerned about RAHFCO's lack of transparency after Sadis & Goldberg withdrew as counsel; that Hansen learned Johnson and Onsa faced allegations of securities fraud; that Hansen knew a large

group of investors withdrew from the fund after learning of Onsa's legal troubles; that RAHFCO was unable to meet withdrawal requests; and that Hansen made Ponzi scheme payments.

Second, there was sufficient evidence to allow a reasonable juror to find that Hansen deliberately failed to make inquiries, intending to remain ignorant. This evidence included that Hansen refused to authorize Spicer Jeffries to receive a brokerage statement confirming RAHFCO's investments and never found another auditor; that when Hansen visited Onsa to inquire about RAHFCO's holdings he confirmed that Onsa had a trading account but did not request information on RAHFCO's particular holdings, which Spicer Jeffries had told him was necessary for confirmation; that he did not learn more about Onsa's or Johnson's securities fraud allegations; that he never confirmed RAHFCO's investing strategy even when the fund failed to satisfy withdrawal requests; and that, in spite of all this, Hansen, RAHFCO's general partner and the man responsible for reporting the fund's performance to investors, never once confirmed RAHFCO's investments and continued to rely on Johnson and Onsa to provide the fund's performance numbers.[3] See Sigillito, 759 F.3d at 939-40 (finding evidence sufficient to support instruction that defendant was willfully blind to fraudulent misrepresentations where defendant relied on others to provide information about asset values but claimed to have conducted due diligence on those values and where defendant claimed he did not know of liability amount because he chose not to review document listing that

_____

[3]Hansen argues a recent case from the Seventh Circuit, United States v. Macias, – F.3d –, 2015 WL 3377773 (7th Cir. May 26, 2015), supports reversal here. Macias, of course, is not binding on this court. And even as persuasive authority it fails to help Hansen because it declined to address whether "taking some active measure to avoid confirming one's suspicions," which is exactly what a reasonable jury could have found Hansen did here, can amount to willful blindness. Macias, 2015 WL 3377773, at *2 (stating it might be willful blindness where "[a] person who suspected that he had rented his house to a drug gang [took] a wide detour to avoid driving by the house lest he notice someone carrying what appeared to be illegal drugs out of or into the house.").

amount); <u>United States v. Hiland</u>, 909 F.2d 1114, 1131 (8th Cir. 1990) (finding evidence sufficient to support willful blindness instruction where defendant received multiple warnings about danger of product and never followed up even though, as the manufacturer, he was responsible for the product).

On the whole, we find the evidence was sufficient for a reasonable juror to find Hansen intended to commit fraud and thus to convict Hansen of mail fraud, wire fraud, and conspiracy to commit mail fraud and wire fraud.

## B.  Willful Blindness Instruction

We next address Hansen's argument that there was insufficient evidence to instruct the jury on willful blindness.  "We review the district court's jury instructions for abuse of discretion and will affirm '[i]f the instructions, taken as a whole, fairly and adequately submitted the issues to the jury.'"  <u>Florez</u>, 368 F.3d at 1044 (alteration in original) (quoting <u>United States v. Lalley</u>, 257 F.3d 751, 755 (8th Cir. 2001)). When determining "whether there was sufficient evidence to justify the instruction, [we] review[] 'the evidence and any reasonable inference from that evidence in the light most favorable to the government.'"  <u>Id.</u> (quoting <u>Hiland</u>, 909 F.2d at 1130-31). "'A willful blindness instruction is appropriate when the defendant asserts a lack of guilty knowledge, but the evidence supports an inference of deliberate ignorance.'" <u>Id.</u> (quoting <u>United States v. Gruenberg</u>, 989 F.2d 971, 974 (8th Cir. 1993)). "Ignorance is deliberate if the defendant was presented with facts that put her on notice that criminal activity was particularly likely and yet she intentionally failed to investigate those facts."  <u>Id.</u>

For the reasons mentioned in our discussion of Hansen's motion for judgment of acquittal, we find there was sufficient evidence both that Hansen was presented with facts that put him on notice that criminal activity was particularly likely and that he intentionally failed to investigate those facts.  Morever, the district court properly instructed the jury it could "not conclude that Hansen had knowledge . . . from proof

-10-

of a mistake, negligence, carelessness, recklessness, or a belief in an inaccurate position." Final Instructions to the Jury, R. Doc. 50, at 18; see Chavez-Alvarez, 594 F.3d at 1068 (upholding willful blindness instruction in part because instruction prohibited jury from finding knowledge on impermissible grounds). Thus the district court did not err in submitting the willful blindness instruction to the jury.

## C. Conspiracy Instruction

Finally, we address Hansen's argument that the district court erroneously instructed the jury on conspiracy. See 18 U.S.C. § 1349 ("Any person who attempts or conspires to commit any offense under [the mail fraud and other fraud] chapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy."). Because Hansen did not object to the district court's instruction, we are limited to reviewing for plain error. See Fed. R. Crim. P. 30(d) ("Failure to object in accordance with this rule precludes appellate review, except as permitted under Rule 52(b)."); Fed. R. Crim. P. 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention."). "Plain error review requires [Hansen] to show (1) an error, (2) that was 'plain,' (3) 'affects substantial rights,' and (4) 'the error seriously affects the fairness, integrity or public reputation of judicial proceedings.'" United States v. Rush-Richardson, 574 F.3d 906, 910 (8th Cir. 2009) (quoting United States v. Olano, 507 U.S. 725, 735-36 (1993)). "'Jury instructions are adequate if, taken as a whole, [they] adequately advise the jury of the essential elements of the offenses charged and the burden of proof required of the government.'" United States v. Fast Horse, 747 F.3d 1040, 1042 (8th Cir. 2014) (alteration in original) (quoting United States v. Rice, 449 F.3d 887, 895 (8th Cir.2006)).

The district court instructed the jury that the government was required to prove beyond a reasonable doubt three essential elements of conspiracy:

-11-

*One*, that from on or about and between March of 2006 and May of 2011, two or more persons reached an agreement or came to an understanding to devise, make up, or participate in a scheme to defraud investors out of money or property, by means of material false representations or promises; . . .

*Two*, that Hansen voluntarily and intentionally joined in the agreement or understanding, either at the time it was first reached or at some later time while it was still in effect; . . .

*And three*, that at the time Hansen joined in the agreement or understanding, he knew the purpose of the agreement or understanding.

Final Instructions to the Jury, R. Doc. 50, at 3-6. These instructions mirrored the model jury instructions in all relevant respects. See Eighth Circuit Manual of Model Jury Instructions (Criminal) 5.06A-I (2014); see also United States v. Cornelison, 717 F.3d 623, 628 (8th Cir. 2013) ("The model instructions 'are not binding on the district courts of this circuit, but are merely helpful suggestions to assist the district courts.'" (quoting Bady v. Murphy-Kjos, 628 F.3d 1000, 1004 (8th Cir. 2011))). The district court elaborated on the third element as follows:

Without knowledge of the purpose of the conspiracy, Hansen cannot be guilty of the conspiracy offense, even if his acts furthered the conspiracy. *The prosecution does not have to prove that Hansen knew that what he did was unlawful.* In other words, Hansen must have known that the purpose of the conspiracy was to commit wire fraud or mail fraud, but did not have to know that conspiring to commit that offense was illegal.

Final Instructions to the Jury, R. Doc. 50, at 6 (emphasis added). This explanation mirrored the model jury instructions' definition of "knowingly." See Eighth Circuit Manual of Model Jury Instructions (Criminal) 7.03 (2014).

During its deliberations, the jury sent the district court a note asking for clarification on the third element. After conferring with the parties, the district court responded:

> A person may join in an agreement or understanding, as required by this element, without knowing all the details of the agreement or understanding, and without knowing who all the other members are. Further it is not necessary that a person agree to play any particular part in carrying out the agreement or understanding. A person may become a member of a conspiracy even if that person agrees to play only a minor part in the conspiracy, as long as that person has an understanding of the unlawful nature of the plan and voluntarily and intentionally joins in it. In order to join in the agreement or understanding the defendant must possess the knowledge and intent that are required of the underlying crimes alleged in the [indictment].

Response To Jury Note #1, R. Doc. 49, at 1.

Hansen objects to the district court's instruction, which we have emphasized above, that "[t]he prosecution does not have to prove that Hansen knew that what he did was unlawful." Final Instructions to the Jury, R. Doc. 50, at 6. He contends this instruction was in error because he "could [not] have committed the crime of conspiracy without knowing 'what he did' was unlawful." Appellant Br. 33. In other words, Hansen argues he could not have conspired to commit a criminal act unless he knew that act was criminal. Thus he maintains the district court's instruction erroneously permitted the jury to return a guilty verdict (1) even if he lacked knowledge that Johnson, Onsa, and Puma were committing fraud and (2) even if he himself lacked an intent to defraud. We disagree.

The district court addressed Hansen's first concern when it instructed the jury that "Hansen must have known that the purpose of the conspiracy was to commit wire fraud or mail fraud." Final Instructions to the Jury, R. Doc. 50, at 6. It addressed his second concern when it responded to the jury's note by explaining that "[i]n order to

-13-

join in the agreement or understanding the defendant must possess the knowledge and intent that are required of the underlying crimes alleged in the [indictment]." Response To Jury Note #1, R. Doc. 49, at 1. Further, because the jury found Hansen guilty of the underlying mail fraud and wire fraud charges, it is clear the jury found he possessed the requisite underlying intent.

Moreover, we see no error in the district court's instructing the jury that "[t]he prosecution does not have to prove that Hansen knew that what he did was unlawful." Final Instructions to the Jury, R. Doc. 50, at 6. As noted, the district court based that instruction on the model jury instructions. See Eighth Circuit Manual of Model Jury Instructions (Criminal) 7.03 (2014). We have observed that a prior and nearly identical version of the model instructions represents "an accurate statement of the law." United States v. Dockter, 58 F.3d 1284, 1288 (8th Cir. 1995) (citing Manual of Model Criminal Jury Instructions for the District Courts of the Eighth Circuit 7.03 (1994) ("The government is not required to prove that the defendant knew that [his] [her] acts or omissions were unlawful.")). Such instructions reflect the "fundamental" principle that to sustain a conspiracy charge "[t]here need not . . . be proof that the conspirators were aware of the criminality of their objective." Ingram v. United States, 360 U.S. 672, 677-78 (1959); see also Barlow v. United States, 32 U.S. 404, 411 (1833) ("It is a common maxim, familiar to all minds, that ignorance of the law will not excuse any person, either civilly or criminally . . . ."). Hansen cites no cases suggesting 18 U.S.C. § 1349 deviates from this principle, and we decline to issue the first.

Taken as a whole, the district court's instructions adequately advised the jury of the essential elements of the conspiracy charge.

III. Conclusion

For the foregoing reasons, we affirm Hansen's conviction.

_____

-14-