United States Court of Appeals
For the Eighth Circuit
No. 23-3267

LADS Network Solutions, Inc.

*Plaintiff - Appellant*

v.

Agilis Systems, LLC; Archlogix, LLC; Gilead Group, LLC

*Defendants - Appellees*
_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis
_____

Submitted: September 26, 2024
Filed: May 28, 2025
_____

Before BENTON, ARNOLD, and KOBES, Circuit Judges.
_____

KOBES, Circuit Judge.

LADS Network Solutions, Inc. sued Agilis Systems, LLC and its subsidiaries for infringing LADS's registered copyright. The district court granted Agilis's motion for summary judgment, agreeing that LADS's copyright is invalid under 17 U.S.C. § 411(b). Because we believe there is a genuine dispute of fact that precludes summary judgement, we reverse.

To maintain a copyright infringement action, LADS needs a valid certificate of registration. § 411(a). A valid registration requires an accurate statement of the year the work was first published. § 409(8). Generally, a registration is valid "regardless of whether the certificate contains any inaccurate information." *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 595 U.S. 178, 181 (2022) (quoting § 411(b)(1)). But as relevant here, it's invalid if "inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate." *Id.* (cleaned up) (quoting § 411(b)(1)(A)).

LADS develops and markets a suite of courier management software, the Local Area Delivery System. LADS licensed part of its system, GPStrac, to Agilis for use in Agilis's delivery fleet tracking software. The license ran from 2004 through 2009. In 2014, LADS sought copyright protection for GPStrac. LADS's president, Daniel Huber, asked an employee to prepare the original source code for the application. This unnamed employee assembled the first and last 25 pages of the source code, as required by the Copyright Office's rules, and redacted trade secrets. LADS certified that the first publication date—and therefore effective date of the copyright protection—was May 1, 2000.

But the Copyright Office found a problem: a 2004 copyright notice within the source code. In other words, the code couldn't have been published on May 1, 2000. The Copyright Office told LADS that the Copyright Act requires that the original published source code be submitted with the application and permitted LADS to resubmit with the correct code or change the claimed first publication date. LADS chose to resubmit with the correct code, and Huber tasked the same employee with identifying the correct set of files. The employee retrieved a second set of source code, assembled the first and last 25 pages, and redacted trade secrets. LADS resubmitted with the second set of code, and the Copyright Office approved LADS's copyright.

LADS sued in 2019, alleging Agilis infringed its copyright by continuing to use GPStrac after Agilis's license expired. During discovery, LADS produced a set

of unredacted source code that it claimed to have deposited with the Copyright Office. But this time Agilis found a problem—the produced source code contained references to application programming interfaces (APIs)[1] that did not exist on May 1, 2000. Agilis moved for summary judgment, arguing that the copyright should be invalidated and that § 411(b)(1) does not protect it because the API references gave LADS knowledge that the submitted code was not the first published version. The district court agreed, granting summary judgment to Agilis and rejecting LADS's argument that § 411(b)(1) requires more—intent to defraud the Copyright Office.

We review a grant of summary judgment *de novo*, "view[ing] the facts and the inferences to be drawn from them in the light most favorable to [the nonmoving party], but such facts must be properly supported by the record." *Turner v. XTO Energy, Inc.*, 989 F.3d 625, 627, 628 (8th Cir. 2021) (cleaned up) (citation omitted). We affirm if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant for summary judgment always "'bears the initial responsibility of informing the district court of the basis for its motion,' and must identify 'those portions of the record which it believes demonstrate the absence of a genuine issue of material fact.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)) (cleaned up). If "the movant's [initial] burden is discharged," only then does the respondent have any "burden to set forth affirmative evidence [or] specific facts." *Hodge ex rel Farrow v. Walgreen Co.*, 37 F.4th 461, 465 (8th Cir. 2022).

Whether § 411(b)(1)(A) requires only knowledge or a higher showing of fraud is a compelling legal question. *Compare* § 411(b)(1)(A) (requiring an applicant to have "knowledge that [the application] was inaccurate"), *with Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 52 F.4th 1054, 1066 (9th Cir. 2022) (concluding

---

[1]"An API, or application programming interface, is a set of rules or protocols that enables software applications to communicate with each other to exchange data, features and functionality." Michael Goodwin, *What is an API (application programming interface)?*, IBM (Apr. 9, 2024), https://www.ibm.com/topics/api.

amendments to § 411(b) codified the "fraud on the Copyright Office doctrine"). The Supreme Court almost decided the issue. *Unicolors, Inc.*, 595 U.S. at 189–91 (Thomas, J., dissenting). And because Agilis is not entitled to summary judgment, even under the lower standard of actual knowledge or willful blindness, we need not either. *See Unicolors*, 595 U.S. 185–86.[2]

"[T]o have 'actual knowledge' of a piece of information, one must in fact be aware of it." *Intel Corp. Inv. Pol'y Comm. v. Sulyma*, 589 U.S. 178, 184 (2020). For willful blindness, LADS must be "aware of facts that put [it] on notice" that "'there is a high probability that a fact exists'" and "'must [have taken] deliberate actions to avoid learning of that fact.'" *United States v. Hansen*, 791 F.3d 863, 868 (8th Cir. 2015) (quoting *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011)). Willful blindness is more than mere recklessness or negligence. *Id.*

LADS's application was inaccurate because the source code submitted with the application for registration could not have existed on May 1, 2000. But did LADS have actual knowledge of this inaccuracy? Whether it did turns on whether the redacting employee knew or was aware that the code he reviewed was created after May 1, 2000. *See Comprehensive Care Corp. v. RehabCare Corp.*, 98 F.3d 1063, 1066 (8th Cir. 1996). It is undisputed that the redacting employee reviewed the first and last 25 pages of code for trade secrets and that the redacted code contains two references to an API that post-dated May 1, 2000. Agilis argues that seeing these references gave LADS actual knowledge, relying on *Bruhn NewTech, Inc. v. United States*, where the applicant knew the code post-dated the claimed publication date because of a revision date "'embedded in the code' provided to the Copyright Office." 144 Fed. Cl. 755, 817 (2019).

---

[2]Section 411(b)(1) requires actual knowledge of both the inaccurate fact in the application and the legal requirement that makes the fact inaccurate. *See Unicolors*, 595 U.S. at 185. The Copyright Office told LADS that it was required to submit the first published source code, so LADS indisputably had actual knowledge of the relevant legal requirement. *See id.* at 185–86.

We disagree. Unlike in *Bruhn*, the API references standing alone do not necessarily give actual knowledge of when the code was created. Agilis also needed to show that LADS had actual knowledge of the API's creation date for LADS to have known that the code post-dated May 1, 2000. The API's creation date is not obvious and is not found within the API references themselves. Agilis submitted no evidence that LADS knew or was aware of the API's creation date from any other source. It did not depose the redacting employee or any other employee that had actual knowledge of the API's creation date. A jury could infer, as Agilis argues, that the ability to redact this code for trade secrets required a subjective awareness of how the code works, including background knowledge like the API's creation date. But a jury could also infer that the redactions could be completed without subjective awareness of the API's creation date. "Because the record did not 'in fact bear out [Agilis's] claim that no genuine dispute existed,' . . . [LADS] was not required to provide affirmative evidence." *Moore v. Martin*, 854 F.3d 1021, 1028 n.10 (8th Cir. 2017) (citation omitted) (cleaned up). This genuine dispute of a material fact prevents Agilis from being entitled to judgment as a matter of law.

We understand that the parties would like us to answer the question the Supreme Court avoided in *Unicolors*. But given the factual dispute we see in the record, our holding would be only advisory. *See Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) ("[A] federal court has neither the power to render advisory opinions nor to decide questions that cannot affect the rights of litigants in the case before them." (cleaned up) (citation omitted)).

Reversed and remanded for proceedings consistent with this opinion.

_____